Thomas A. Dosik, LLC
721 W. 1st Avenue
Anchorage, AK 99501
(907) 360-7953
Thomas@dosik.biz
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| JOSHUA D. BRIGGS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>OREAN YI, in his personal capacity; and MUNICIPALITY OF ANCHORAGE,<br><br>　　　　　Defendants. | Case No. _____ |

**COMPLAINT**
(42 U.S.C. § 1983, 1985, 1988)

**JURY TRIAL DEMANDED**

**Jurisdictional Statement:**

This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985 and 1988. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

**Introduction:**

Plaintiff Joshua Briggs brings this complaint, pursuant to 42 U.S.C. § § 1983, 1985 and 1988, seeking redress for defendants' violations of his rights guaranteed under

the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America.

Briggs was arrested and subject to illegal search, seizure, and criminal prosecution solely for calling an Anchorage Police Officer Orean Yi a "pig" and questioning whether Yi was drunk while on duty. Briggs's arrest violates the most of cherished of American rights—the right to freely and peacefully express one's opinion of the government. The right to criticize the government, specifically the right to question or insult a police officer without being arrested, is guaranteed by the First Amendment to the United States Constitution and has been affirmed numerous times by the Circuit Courts and the United States Supreme Court. The existence of this right is clearly established and not debatable.

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 461, 462-63 (1987). "Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago,* 337 U.S. 1, 4 (1949).

## Parties

1. Plaintiff Joshua Briggs is an individual, a citizen and resident of Anchorage, Alaska.

2. Defendant Orean Yi is employed as a police officer by the Municipality of Anchorage, and upon information and belief is a resident of Anchorage, Alaska.

3. Defendant Municipality of Anchorage is a political and geographical subdivision of the State of Alaska, organized and existing under the laws of the State of Alaska.

4. At all times relevant to the claims made here Defendants acted under color of state law.

## Jurisdiction and Venue

5. This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985 and 1988. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391(a) and (b)(2) as the actions and omissions giving rise to the claim occurred in Anchorage, AK.

## Facts

7. Officer Yi arrested Plaintiff Joshua Briggs ("Briggs") on July 12, 2022, because Briggs called Yi a "pig" and questioned whether Yi had been drinking.

8. On July 12, 2022, Briggs entered the Holiday Stationstore located at 1500 East Fifth Avenue in Anchorage. Briggs gathered several items he intended to purchase and stood in line to pay for them. In front of Briggs in line was Officer Yi, who was on duty and in uniform.

9. Briggs said "Hey look, it's a pig." Briggs did not threaten Yi.

10. Yi turned to confront Briggs, and immediately assumed a "defensive posture."

11. After Yi turned towards Briggs, Briggs could smell alcohol on Yi's breath. Yi asked Briggs to identify himself and Briggs refused. Instead, Briggs asked Yi if he had been drinking. Yi then leaned close to Briggs and blew in his face. Briggs told Yi that blowing in his face doesn't answer the question and that he would contact Yi's superior to have him sobriety tested. Yi then demanded Briggs's ID and told Briggs that he was being detained for disorderly conduct. Briggs then tried to walk forward to the cashier station, but Yi then arrested and handcuffed Briggs.

12. In explaining the situation to another Anchorage Police Officer on the scene, Yi stated:

> I'm sitting with, I'm buying coffee and he comes up to me really close, he goes, "Hey, look who it is, it's a pig." I was like, "What?" He goes "What, you're a pig" and then he starts, just going off. I was like "Dude, what's your problem?" He goes, "Oh, are you drunk, do you not understand?" I was like "Dude, OK we'll make it a day. I'm like, [unintelligible] because, you're harassing in front of me..." and, he tried to walk off, I was like fuck that, I'm going to get an ID….

13. Briggs did not yell, make loud noise, or otherwise create a disturbance.

14. While Briggs was handcuffed, Yi reached into Briggs's pocket and removed his wallet and keys and other items. Yi then searched through Briggs's wallet and pulled out Briggs's driver's license.

15. At no time did Briggs consent to being searched or consent to the search of the contents of his wallet.

Complaint
Briggs v. Yi
Case No. _____                                                                                                    Page 4
Case 3:22-cv-00265-SLG   Document 1   Filed 12/12/22   Page 4 of 19

16. After Yi searched his person and effects, Yi placed Briggs, still handcuffed, in the back of his patrol car. Briggs remained handcuffed in the back of the patrol car for more than one hour.

17. While in the patrol car Yi read Briggs's home address from his driver's license and proceeded to repeat the address numerous times to Briggs, implying that Yi now knew where Briggs lived. Yi also stated "I am going to have every officer in the State of Alaska show up at your house now."

18. While Briggs was in the patrol car, Briggs's girlfriend, Ashley Manculich, asked officer Yi why Briggs was being arrested and the following conversation took place:

> Manculich: Tell me why he's being arrested …. Can you not. (As Yi gets uncomfortably close to and confrontational with Manculich)
>
> Yi: Let me talk to you.
>
> Manculich: You can talk to me, stay right there.
>
> Yi: You don't tell me where to stop.
>
> Manculich: Please don't walk into me.
>
> Yi: What's your name?
>
> Manculich: Ashley Manculich
>
> Yi: Okay, so what's going on right now is I was here waiting for a coffee and your boyfriend comes back to me very close and he goes, "hey, look who it is, it's a pig." And I was like, excuse me.
>
> Manculich: He doesn't like cops.
>
> YI: Okay, what if I came up to your boyfriend or you and called you names?
>
> Manculich: Then we go oh, my god, my feelings got hurt and I walk away.

Yi: Guess what? And I said "Can I help?" and he goes no.

Manculich: Tell me where it's illegal to say that you, I'm sorry I don't think you are a pig, but tell me where it's illegal to say that.

Yi: It started to be a harassment when starts to barrage…

Manculich: Excuse me, he's an asshole in the morning when he hasn't had coffee yet.

Yi: Okay, we'll make it a day. We'll see what we can do because we can't have him run around cops and calling people names and be disorderly.

Manculich: Because you can't handle anybody saying something mean about you?

Yi: Not just me, probably everybody else he's run into.

Manculich: Yeah, because he's had a lot of bad issues with cops.

19. Yi appears drunk and belligerent in the video recording of the above conversation.

20. Briggs was charged with Disorderly Conduct under AMC 08.30.120(A)(2) and Harassment under AMC 08.10.110(A)(1). Briggs was released on his own recognizance and ordered to appear in court on September 12, 2022.

21. Briggs did not knowingly generate a loud noise with the intent of disturbing others or in reckless disregard of the peace and privacy of others, as is required for a violation of AMC 08.30.120(A)(2). Briggs did not raise his voice or use any other noise making device, and certainly did not make noise loud enough to inhibit the ability of the average person in the Holiday Stationstore to converse freely without leaving the store. To the extent that AMC 08.30.120 makes Briggs's conduct illegal, the municipal code

must yield to the United States Constitution, which gives individuals the right to verbally criticize police officers.

22. Briggs did not insult, taunt, or challenge Yi in a manner likely to provoke an immediate violent response as is required for a violation of AMC 08.10.110. If Yi is prone to immediate violent responses to juvenile name-calling, he should not be a police officer. To the extent that AMC 08.10.110 makes Briggs's conduct illegal, the municipal code must yield to the United States Constitution, which requires a police officer to be sufficiently mature to withstand an occasional taunt without resorting to violence.

23. Yi and the rest of the Anchorage Police failed to capture the incident on body worn cameras.

24. Yi failed to activate the body worn microphone paired with the dash camera in his patrol car. There is a video recording of Briggs while Briggs was in Yi's patrol car, but Yi's statements to Briggs are largely inaudible on this recording.

25. Yi and the rest of the Anchorage Police failed to obtain video footage from the numerous security cameras in and around the Holiday Stationstore where this incident took place.

26. Yi and the rest of the Anchorage Police failed to take any witness statements from any persons in the Holiday Stationstore at the time.

27. Yi and the rest of the Anchorage Police failed to record the names of any witnesses to the incident.

28. On August 30, 2022, Briggs filed a complaint with the Anchorage Police Department alleging that Yi had acted improperly in arresting him on July 12, 2022.

29. On August 31, 2022, and September 1, 2022, Officer John Glor of the Anchorage Police Department conducted interviews of various witnesses to the July 12 incident at the Holiday Stationstore. Upon information and belief Officer Glor's interviews were conducted in furtherance of an internal investigation undertaken in response to Briggs's complaint.

30. Officer Glor's interviews produced no evidence that Briggs had committed the crime of disorderly conduct or harassment.

31. Officer Glor's interviews produced reliable witness statements that Briggs had not been disorderly. In fact, of the three store employees interviewed, one did not recall the incident at all despite being on duty at the time. One employee stated that he was 15 feet away and watched the interaction between Briggs and Yi closely because he observed Yi "get into a defense posture" and saw "it was kind of serious" but that "couldn't hear anything." The third employee also observed the incident could not hear what was being said.

32. Despite the arrest occurring on July 12, Municipal prosecutors waited until September 12, 2022, the day scheduled for Briggs's arraignment, to file any sort of charging document. Upon information and belief, this delay was intentional in order to prevent Briggs from knowing the basis of the charges against him prior to his arraignment and being able to challenge the probable cause to arrest him.

33. On September 12, 2022, Municipal prosecutors filed an "Information" containing misrepresentations of what happened at the Holiday Stationstore. Despite having obtained reliable witness testimony that directly contradicted Officer Yi's narrative, prosecutors incorporated the entire narrative into the Information.

34. The Information on its face fails to establish probable cause for an arrest for either disorderly conduct or harassment. The municipal ordinance regarding disorderly conduct prohibits a person from generating "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place." The Information does not state, and does not contain information sufficient to infer, that any person had to leave the premises in order to have a conversation or that Briggs was being so loud that a person would have had to leave the premises to converse freely.

35. The Information also states that Briggs began "taunting and insulting" Officer Yi, and that even after Briggs was in handcuffs and had been escorted outside the store he "continued to harass" Officer Yi. Verbally insulting police is protected under the First Amendment and cannot form probable cause for arrest and prosecution. Any police officer who feels "harassed" by an arrestee in handcuffs to the point where he may have "an immediate violent response" is a danger to the public and should not be on the force.

36. The Harassment charge was dismissed by Alaska District Court on September 13, 2022, for lack of probable cause.

Complaint
Briggs v. Yi
Case No. _____                                                                                                 Page 9
Case 3:22-cv-00265-SLG   Document 1   Filed 12/12/22   Page 9 of 19

37. The Disorderly Conduct charge was dismissed by the Alaska District Court on December 5, 2022.

38. The unlawful conduct of Defendants was objectively unreasonable, flagrantly unconstitutional and undertaken with willful indifference to Briggs's rights.

39. The unlawful conduct of Defendants violated Briggs's clearly established Constitutional rights of which every reasonable police officer should be aware.

40. As a result of Defendants' actions, Briggs has suffered damages that include, but are not limited to mental distress, damage to reputation, attorney fees, loss of freedom, pain and suffering, and loss of his Constitutional rights.

## COUNT I—FIRST AMENDMENT RETALIATION

41. The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

42. Calling a police officer a "pig" is Constitutionally protected speech.

43. Questioning whether a police officer is inebriated is Constitutionally protected speech.

44. Brigg's protected speech was the only reason that he was detained, handcuffed, arrested, and prosecuted.

45. At all times relevant to this complaint, Briggs had a clearly established right under the First Amendment to the United States Constitution to express his opinion of a police officer to that police officer. The First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is shown to produce

a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

46. Criticism of police officers falls squarely under the protective umbrella of the First Amendment and any action to punish or deter such speech is categorically prohibited by the United States Constitution.

47. Being detained, handcuffed, arrested, and criminally prosecuted are adverse action that are likely to chill a person of ordinary firmness from continuing to engage in protected speech.

## COUNT II—FALSE ARREST

48. The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

49. Yi, acting under color of law, participated in and effected the warrantless arrest of Briggs for the alleged crimes of disorderly conduct and harassment.

50. Yi had no probable cause to believe that a crime had occurred or that Briggs had committed a crime.

51. Yi arrested Briggs to retaliate against him for exercise of his first amendment rights.

52. Every reasonable police officer should have known that there was no probable cause to arrest Briggs.

53. Yi's arrest of Briggs violates the First and Fourth Amendments to the United States Constitution.

## COUNT III—UNREASONABLE SEARCH AND SEIZURE

54. The allegations of the preceding paragraphs are incorporated as if fully set forth herein.

55. The warrantless arrest of Briggs and warrantless search and seizure of his person, effects, and documents was intentional and entirely without probable cause and was therefore unreasonable, and in violation of the Fourth Amendments to the United States Constitution.

## COUNT IV—MUNICIPAL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE

56. The allegations of the proceeding paragraphs are incorporated as if fully set forth herein.

57. Defendant Yi deprived Briggs of his Constitutional rights. This deprivation resulted from the custom and policy of the Municipality of Anchorage. Anchorage has an established policy of deliberate indifference to the rights of its citizens and allows Anchorage Police Officers to violate rights without supervision, oversight, or correction.

58. Anchorage does not require its police officers to wear body cameras or to record conversations and actions taking place in police vehicles. There is no body camera footage of the actions taken by Yi in this or any other case involving the Anchorage Police.

59. The failure to equip Anchorage police officers with body worn cameras amounts to intentional ignorance by the Municipality of what Anchorage police officers

are doing while on duty. When Anchorage does not know what its police officers are doing, Anchorage cannot adequately supervise its police officers.

60. Anchorage has the means, ability, and funding to implement a body worn camera program, which would allow it to learn about and hold its police officers accountable for Constitutional violations. Anchorage chooses not to implement such a program. This is deliberate indifference to Constitutional and other violations committed by its police officers.

61. In June of 2020, years after the vast majority of police agencies in the United States began equipping their officers with body worn cameras, Anchorage Police Department announced it would begin the process of equipping its officers with cameras and asked the Anchorage Assembly for funding.

62. In January of 2021, the Anchorage Assembly put a special levy of $1.8 million for body worn cameras on the ballot and provided an additional $250,000 for cameras in AO 2020-116(S).

63. In February of 2021, the Anchorage Police Department announced that police officers would be wearing cameras by the end of the year.

64. In April of 2021, Anchorage residents approved the special levy and agreed to voluntarily tax themselves an additional $1.8 million to fund body cameras for the Anchorage Police Department.

65. Even with additional funding no progress has been made on having police officers wear body cameras. In February of 2022, Anchorage Police Chief Michael Kerle stated publicly: "Just going to tell you, as the chief of police, I'm embarrassed that we sat

here and said a year ago that we expected body cameras at the end of 2021 …. We're here a year later and, to tell you the truth, we're really not much closer to having body cameras."

66. Chief Kerle's embarrassment is not an adequate substitute for effective supervision of police officers.

67. The funds for body cameras have been reallocated to expenditures with no obvious connection to body cameras, such as computer aided dispatch and record systems.

68. If Yi had been wearing a properly activated body camera while interacting with Briggs, he would not have been so bold about violating Briggs's rights. Yi knew there would be no repercussions for his actions because he knew there would be no evidence of what they actually did and said and no evidence of the real reason he arrested Briggs.

69. Anchorage's deliberate policy of turning a blind eye to its police officers' actions harms the citizens of Anchorage every day and allows flagrant Constitutional violations to go undetected and unpunished.

70. Anchorage Police has an official, written policy encouraging officers to charge people with disorderly conduct when they are being rude, uncooperative, fail to provide ID or challenge an officer's authority. This policy actively encourages police officers to violate Constitutional rights. Being rude to a police officer is a Constitutionally protected right. Being uncooperative with a police officer is a Constitutionally protected right. Refusing to provide ID to a police officer is a

Constitutionally protected right, absent a reasonable articulable suspicion of criminal activity. There is no statute in Alaska compelling a person to provide ID to a police officer unless that person is driving a motor vehicle. Challenging an officer's authority is a Constitutionally protected right.

71. Every police officer is required to know the basic Constitutional rights afforded to the citizenry.

72. Officer Yi either did not know that his actions violated Briggs's clearly established Constitutional rights, or Officer Yi intentionally violated Briggs's clearly established Constitutional rights.

73. Officer Yi is not alone in his ignorance. Another Anchorage police officer who was on the scene of Briggs's arrest was also unaware of basic Constitutional rights. While Briggs was handcuffed in front of Yi's patrol car, the other officer told Briggs: "You were harassing an officer and he has every legal requirement to arrest you for his safety," and stated that the harassment consisted of Briggs approaching Yi and calling him names.

74. No supervisor or superior officer reviewing Briggs's arrest recognized that Yi's actions were obviously unconstitutional.

75. The Municipal prosecutor knew or should have known that Yi's actions were obviously and facially unconstitutional, but the prosecutor chose to pursue charges anyway.

76. The failure of Officer Yi and the entire chain of command to recognize that Officer Yi's actions were illegal and unconstitutional demonstrates deliberate

indifference to Briggs's Constitutional rights as well as a failure to adequately train police officers.

## COUNT V—PUNITIVE DAMAGES

77. The allegations of the proceeding paragraphs are incorporated as if fully set forth herein.

78. Defendants' actions and inactions described above were taken with willful malice. It was willful malice towards Briggs that led Yi to arrest Briggs, not any actual crime committed by Briggs.

79. Defendants' actions and inactions described above were intentional and taken with gross and reckless disregard for Briggs's Constitutional rights. The arrest of Briggs was intentional, and with no regard for his clearly and explicitly established Constitutional rights. The failure to equip Anchorage Police Officers with body worn cameras is an intentional policy of the Municipality of Anchorage implemented with the foreseeable, if not intentional, consequence that violations of rights would go undetected and undeterred.

## COUNT VI—AMC 08.30.120(A)(2) IS UNCONSTITUTIONAL

80. AMC 08.30.120(A)(2) is facially unconstitutional, as it is both overbroad and vague.

81. AMC 08.30.120 reads as follows:

A. It is unlawful for any person to:

    1. Knowingly engage in consensual sexual penetration, as defined in AS 11.81.900(b), in a public place or a place reasonably exposed to public view.

2. Knowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others.

3. Knowingly generate loud noise in a private place with the intent to disturb others or in reckless disregard of the peace and privacy of others after having been informed that the loud noise is disturbing the peace and privacy of others not in the same place.

4. Knowingly look or peep into an enclosed area for the purpose of observing another person who has a reasonable expectation of privacy therein. As used in this subsection, the term "enclosed area" includes but is not limited to tanning booths, dressing rooms, toilets, and washrooms.

5. Knowingly refuse to comply with a lawful order of the police to disperse in a public place when a criminal offense has occurred.

6. Knowingly challenge another to fight, or engage in fighting other than in self-defense.

7. Knowingly or recklessly create a hazardous condition for others.

8. Intentionally or knowingly spit on, or otherwise transfer blood, saliva, urine, feces, or vomitus onto a public servant.

B. For purposes of this section, the term:

1. Loud noise, in a private place, means noise which is loud enough to awaken the average person sleeping in a place other than the private place. If the loud noise constitutes speech, the content of speech or evidence of specific words used by the defendant is admissible in evidence against the defendant only as permitted by court rule.

2. Loud noise, in a public place, means noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place.

3. Public place means a place where the public is permitted to assemble, enter or pass through, whether publicly or privately

> maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place which is not a private place.
>
> C. Violation of this section is a class B misdemeanor.

82. By defining a public space to include any "place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained," and loud noise in a public place to mean "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place," the ordinance frequently criminalizes first amendment protected activities. There is no provision for a property owner to determine appropriate and reasonable noise levels in the owner's own place of accommodation, transportation, business or entertainment. Under this ordinance the owner of a night club playing loud music in his own club would be guilty of disorderly conduct, as would a politician giving a speech in a privately owned venue open to the public, and even a child throwing a tantrum at the grocery store

83. By creating an entirely unenforceable standard the ordinance effectively removes all standards, allowing unfettered discretion for the police to enforce or not enforce the ordinance as they choose.

Wherefore Plaintiff Joshua Briggs prays for the following relief:

A. For judgment to be entered against defendant Orean Yi in his personal capacity in an amount to be proven at trial;

B. For judgment to be entered against defendant Municipality of Anchorage in an amount to be proven at trial;

C. For an injunction against any further enforcement of AMC 08.30.120(A)(2) and other injunctive relief as necessary to prevent Defendants from violating Constitutional rights;

D. For an award of costs, attorney fees and interest;

E. For an award of punitive damages in an amount to be determined at trial;

F. For all other relief determined to fair and equitable under the circumstances.

Done this 9th day of December, 2022.

                                                Thomas A. Dosik, LLC
                                                Attorney for Plaintiff

                                                By: /s/ Thomas A. Dosik
                                                Thomas A. Dosik
                                                Alaska Bar No. 9505018