Thomas A. Dosik, LLC
721 W. 1st Avenue
Anchorage, AK 99501
(907) 360-7953
Thomas@dosik.biz
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA AT ANCHORAGE**

| | |
|---|---|
| JOSHUA D. BRIGGS,<br><br>  Plaintiff,<br><br>v.<br><br>OREAN YI, in his personal capacity; and MUNICIPALITY OF ANCHORAGE,<br><br>  Defendants. | Case No. 3:22-cv-00265-SLG |

**Motion and Memorandum in Support for Preliminary Injunction**

ORAL ARGUMENT REQUESTED

For the reasons described below Plaintiff Joshua Briggs hereby moves this court for entry of a preliminary injunction enjoining defendants from taking action to prevent him from exercising his first amendment rights or retaliating against him for doing so. Additionally, Briggs requests that Defendants be preliminarily enjoined from enforcing AMC 08.30.120(A)(2) in any manner.

## I. Introduction

This is a civil rights action for monetary and injunctive relief against the Municipality of Anchorage and one of its police officers for violations of Plaintiff's First and Fourth Amendment rights, and for an injunction preventing Defendants from enforcing AMC 08.30.120(A)(2) because that ordinance is unconstitutionally overbroad and vague.

Plaintiff Joshua Briggs was arrested on July 12, 2022, for calling Anchorage Police Officer Orean Yi a "pig." Yi's justification for the arrest was that Briggs said something mean to him, and he "probably" said mean things to "everyone else he's run into." Briggs was arrested and charged with Disorderly Conduct and Harassment under the Anchorage Municipal Code. The Municipality chose to prosecute Briggs for the exercise of his First Amendment rights. Not only was his arrest and prosecution devoid of probable cause, Anchorage's ordinance on disorderly conduct is facially unconstitutional.

Neither the Municipality nor Officer Yi have given any indication that they would act any differently if Briggs—or any other person—again chooses to exercise their First Amendment rights by criticizing a police officer. Therefore, a preliminary injunction is necessary to secure Briggs's rights during the pendency of this action and Briggs requests that this court enter such an injunction preventing Defendants Yi and Municipality of Anchorage from enforcing AMC 08.30.120(A)(2).

## II. Facts and Proceedings

Plaintiff Briggs was arrested for calling a police officer a name and questioning whether the police officer was drunk while on duty at 7:45 a.m. The facts, according the

criminal charging document filed by the Defendant Municipality of Anchorage against Briggs, can be summarized as follows:

On July 12, 2022, Joshua Briggs entered the Holiday Stationstore on East 5th Avenue in Anchorage. He got in the checkout line behind Anchorage Police Officer Orean Yi, and stated "Oh look, it's a pig." Officer Yi asked Briggs if he needed help. Briggs responded that he did not and told Yi to get back in line. When Yi did not do so, Briggs asked Yi "Do you not understand." Despite the lack of any racial undertone to these comments, Yi "took this to mean [Briggs] was questioning if [Yi] understood English because of his race." Yi considered this to be criminal harassment. Then, according to Yi, Briggs "raised his voice and began insulting and taunting the officer. Making comments about the officer being drunk on the job, if the officer understood him, and that officer needed to be tested."[1]

More succinctly, Yi told a fellow officer at the scene that:

> I'm sitting with, I'm buying coffee and he comes up to me really close, he goes, "Hey, look who it is, it's a pig." I was like, "What?" He goes "What, you're a pig" and then he starts, just going off. I was like "Dude, what's your problem?" He goes, "Oh, are you drunk, do you not understand?" I was like "Dude, OK we'll make it a day. I'm like, [unintelligible] because, you're harassing in front of me..." And he tried to walk off, I was like fuck that [unintelligible] I'm going to get an ID….[2]

This, according to Yi, was conduct worthy of being arrested, handcuffed, escorted from the store, held in the back of a police car for an extended period of time, and charged with

---

[1] See Exhibit 1 to Declaration of Thomas Dosik, filed herewith.
[2] See Declaration of Thomas Dosik, paragraph 5.

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 3
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 3 of 18

harassment and disorderly conduct. This, according to the Municipality, was conduct worth prosecuting.

Briggs was held in the back of Yi's police car for more than an hour, and eventually given a document entitled Order and Conditions—Release Per Schedule, which informed him that he was charged with Disorderly Conduct and Harassment commanded him to appear in court on September 12, 2022.[3]

No charging document was filed by the Municipality until the day of the commanded appearance, September 12, 2022. When Briggs protested this arraignment by ambush, the arraignment was continued until the next day. On September 13, the Alaska District Court judge dismissed the harassment charge for lack of probable cause. After Briggs filed a motion contesting probable cause for his Disorderly Conduct arrest, the Alaska District Court dismissed the disorderly conduct charge on December 5.[4]

### III. Argument

#### A. Standing

Briggs has standing to bring this suit for damages and to challenge the constitutionality of AMC 08.30.120(A)(2). To establish standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.[5] Briggs was injured and suffered damages as the direct result of his

---

[3] See Exhibit 2 to Declaration of Thomas Dosik.
[4] See Exhibit 3 to Declaration of Thomas Dosik.
[5] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 4
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 4 of 18

unconstitutional search, seizure, and arrest. He was deprived of his liberty, forced to incur attorney expenses to defend himself, and suffered other damages. The conduct of Defendants and the existence of the unconstitutional ordinance are the direct causes of his injuries. A favorable decision will redress his injuries by affording him some compensation and vindicating his rights to continue to exercise his First Amendment freedoms.

### B. Legal Standard

To warrant preliminary injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[6]

#### 1. Likelihood of Success on the Merits

Plaintiff is more than likely to succeed on the merits of both his claim that his constitutional rights were violated and his claim that AMC 08.30.120(A)(2) is facially unconstitutional.

##### a. Briggs's Constitutional rights were violated.

There was no probable cause to arrest Briggs for either Disorderly Conduct or Harassment. Briggs did nothing more than engage in freedom of expression as guaranteed by the First Amendment to the United States Constitution.

---

[6] *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008).

Even though under AMC 08.10110(A)(1) it is "unlawful for any person, with reckless disregard for any harassing or annoying effect on another person, to … [i]nsult, taunt, or challenge another person in a manner likely to provoke an immediate violent response," criticism of the police, profane or otherwise cannot be made a crime. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[7]

While so called "fighting words" or "incitement to riot" are not protected by the First Amendment, Briggs's words to Officer Yi do not fall into this category. To characterize speech as actionable "fighting words," the government must prove that there existed "a likelihood that the person addressed would make an immediate violent response."[8] But it takes far more than calling a police officer a pig to meet this standard. The "fighting words" exception to free speech rights must be applied especially narrowly in cases involving words directed at a police officer "because a properly trained police officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"[9] The First Amendment protects verbal criticisms and profanity directed at police officers unless the speech is likely to produce "a clear and present danger of a serious substantive

---

[7] *City of Houston v. Hill*, 482 U.S. 461, 462-63 (1987).
[8] *United States v. Poocha*, 259 F.3d 1077, 1080–81 (9th Cir. 2001), *quoting Gooding v. Wilson,* 405 U.S. 518, 528 (1972).
[9] *City of Houston*, 482 U.S. at 462 (citation and internal quotation marks omitted).

*Briggs v. Yi*     Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG
Page 6
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 6 of 18

evil that rises far above public inconvenience, annoyance or unrest."[10] Briggs's words do not come close being such a substantive evil.

Courts have conduct far more threatening and harassing than Briggs's name-calling to be protected speech. For example, in *United States v. Poocha*[11] National Park Service rangers attempted to arrest an individual in Yosemite National Park. An unruly and hostile crowd of 30 to 50 people gathered to watch the arrest. A smaller group, including Poocha, was particularly angry and emotional. When told to disperse, Poocha "clenched his fist, stuck out his chest and yelled 'fuck you." Poocha was allowed to leave and then arrested and charged with disorderly conduct[12] the next day.[13] He was found guilty of "us[ing] language in a matter [sic] that was likely to incite an immediate breach of the peace."[14] In the context of rangers attempting to make an arrest while being vastly outnumbered by a belligerent crowd, Poocha's conduct and language created a far more dangerous situation than Briggs's statements in a convenience store. Nonetheless the Ninth Circuit held that "Poocha's statement constitutes constitutionally protected speech and does not provide a lawful basis for a conviction."[15]

It is a "prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for

---

[10] *Id*. at 461.
[11] 259 F.3d 1077 (9th Cir. 2001).
[12] The federal regulation under which Poocha was charged contains language similar to Anchorage's harassment ordinance.
[13] *Id*. at 1078-79.
[14] *Id*. at 1080.
[15] *Id*. at 1082.

'vigorous advocacy' no less than 'abstract discussion.'"[16] A police officer may not "exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment."[17]

Nor was there probable cause to arrest Briggs for Disorderly Conduct. AMC 08.30.120(A)(2) states that it is "unlawful for any person to … [k]nowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others." The ordinance goes on to define a public place as "a place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place which is not a private place." The ordinance further defines "loud noise in a public place" as "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."

Even taking Officer Yi's account in the criminal Information at face value, there was no cause to believe that Briggs was generating noise loud enough to inhibit the ability of the average person in the Holiday Stationstore to converse freely without leaving the store. Yi claims that Briggs "raised his voice" and "continued to yell and create loud noise disturbing other customers by acting disorderly." The fact that other customers may have been "disturbed" does not establish that they could not continue converse freely anywhere else in the store.

---

[16] *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964).
[17] *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1980).

*Briggs v. Yi*　　　　　　　　　　　　　　Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 8
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 8 of 18

Yi's statement that Briggs was being "loud" is no more credible than a police officer claiming probable cause to arrest a driver for speeding because the driver was "going fast," without mentioning how fast the driver was going or what the speed limit was. Where an ordinance creates a clear and objective standard, probable cause cannot be found for a violation of the ordinance where the evidence does not show that the standard was exceeded, and the record doesn't show that the arresting officer and Municipal prosecutors were even aware that standard existed.

At face value the criminal Information does not establish probable cause for an arrest. But the Information cannot even be taken at face value. Months after the incident Anchorage Police Officer John Glor conducted interviews of witnesses to the event. The most detailed account comes from Dana Teeter, who was working at the Holiday Stationstore at the time. He stated that while he behind the counter, 15 feet away, he could see that there was an interaction going on between Yi and Briggs but could not hear what they were saying. If Mr. Teeter could not even hear what was being said from 15 feet away, there is no possibility that Briggs was being so loud and so disorderly that average people could not have a conversation without leaving the store.[18] Moreover Officer Yi himself stated that he arrested Briggs because Briggs called him a pig and asked if he was drunk, not because Briggs was being disturbingly loud. The content of Briggs's statements is what Yi decide "fuck that, I am going to get an ID…" not the volume.

---

[18] See Declaration of Thomas Dosik.

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 9
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 9 of 18

Because there was no probable cause to arrest Briggs, his arrest, and the search and seizure of his person and effects, were unconstitutional.

### b. AMC 08.30.120(A)(2) is Facially Unconstitutional.

Anchorage's Disorderly Conduct ordinance is so fundamentally flawed that it cannot be constitutionally applied in any circumstances. As stated above, AMC 08.30.120(A)(2) makes it "unlawful for any person to … [k]nowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others." A public place is defined as "a place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place which is not a private place." This would include a gas station convenience store. The ordinance further defines "loud noise in a public place" as "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."

#### i. AMC 08.30.120(A)(2) is Overbroad.

A statute is overbroad and facially invalid if it prohibits a substantial amount of protected speech.[19] Even if it is content neutral, a statute is overbroad if it "is directed

---

[19] *Virginia v. Hicks,* 539 U.S. 113, 119–120 (2003).

*Briggs v. Yi*   Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG
Page 10

Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 10 of 18

narrowly and specifically at expression or conduct commonly associated with expression."[20]

Making noise sufficiently loud that others have to move away to have a conversation is very much expression and very much conduct commonly associated with expression. Especially when such noise is made on private property to which the public is invited. A band playing in a bar is expression. A candidate for elected office invited to make a political speech in a privately owned venue is pure political expression. Salvation Army bell ringers in Santa costumes in the entryways of grocery stores are engaged in expression. Yet all of these activities would be considered illegal disorderly conduct under AMC 08.30.120.

A state may impose content-neutral regulations limiting " 'the time, place, and manner of expression' if the regulations are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'"[21] A speech regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." The fact that "the government's interest could be adequately served by some less-speech-restrictive

---

[20] *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Sept. 17, 1996) (citing *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750 at 760 (1987)).
[21] *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 11
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 11 of 18

alternative" will not invalidate an otherwise reasonable time, place, or manner restriction "[s]o long as the means chosen are not substantially broader than necessary."[22]

Anchorage's ordinance is not narrowly tailored and is substantially broader than necessary. Anchorage's ordinance is so overbroad that it prohibits all sorts of expressions that people take for granted. By failing to take into account whether the noise level generated appropriate for any particular circumstances, whether the private owner of a publicly accessible forum allows for a particular noise level or type of noise making, and whether people have a reasonable expectation that they could hold a quiet conversation at a particular time and place, the ordinance outlaws even the most fundamental and basic types of expression that all Americans take for granted.

### ii. AMC 08.30.120(A)(2) is Unconstitutionally Vague.

A law is unconstitutionally vague if it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement,[23] or if "men of common intelligence must necessarily guess at its meaning."[24] AMC 08.30.120 does give fair notice of the conduct it purports to punish, but it is so overbroad and criminalizes so much quotidian activity that it cannot be enforced as written. In addition to the examples of criminalized expression listed above, the ordinance criminalizes a child throwing a temper tantrum at a grocery store, a cargo pilot taking off from Ted Stevens airport, the announcer at a sporting event, etc. But not violating the noise

---

[22] *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200–01 (9th Cir. 2016).
[23] *Johnson v. United States*, 576 U.S. 591, 595 (2015).
[24] *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 12
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 12 of 18

standard would be a person screaming into a bullhorn in Town Square Park if a conversation could be had by two people in the farthest corner of the "public space." For all practical purposes, the ordinance is entirely unenforceable as written.

This practical inability to enforce the ordinance in so many circumstances to which it would apply invites completely arbitrary enforcement. When police can pick and choose with no discernable standards when to enforce the law, no person has fair notice of when it will be enforced.

Although "men of common intelligence" do not have to guess at the meaning of the ordinance they do have to guess at when it might be enforced. The de facto standard that was applied to Briggs, and to unknown number of others in Anchorage, is that if your words or conduct annoys a law enforcement officer, the law will be enforced against you. And an ordinance is unconstitutional if its enforcement "may entirely depend upon whether or not a policeman is annoyed."[25]

### iii. There are no limiting constructions.

An ordinance cannot always be taken completely literally for purposes of a constitutional challenge. In evaluating a facial challenge the court "must consider the [Municipality's] authoritative constructions of the ordinance, including its own implementation and interpretation of it."[26] In this case, however, there is no such authoritative construction, and the available evidence shows that the Municipality has and will implement the ordinance in unconstitutional ways.

---

[25] *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971).
[26] *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992).

There is no published case law from either Alaska state courts or the federal courts that limit the reach of AMC 08.30.120(A)(2). There is only one reported case substantively addressing the ordinance. In *Pines v. Municipality of Anchorage*,[27] the Alaska Court of Appeals upheld a defendant's conviction under AMC 08.30.120(A)(2) where testimony at trial showed that he the defendant had been "yelling and screaming at 11:00 at night," even though there was no specific evidence to show that he was being loud enough to inhibit the ability of average people in the same place to converse freely without leaving the public place. The court noted that the defendant did not raise a first amendment challenge.

The Municipality has shown a willingness to arrest, charge, and prosecute Mr. Briggs under the ordinance for simply exercising his first amendment rights. This is not simply a case of an individual police officer making an ill-advised decision. Officer Yi's superiors approved of the arrest. The municipal prosecutors went ahead with prosecuting Joshua Briggs even after they had obtained evidence that directly contradicted the account of Officer Yi. The Municipality has expressed no understanding that their conduct violated the most basic tenets of the constitution nor has the Municipality given any indication that they would act differently if the exact same situation were to arise again.

Moreover, Anchorage has an official policy encouraging police to arrest people for disorderly conduct simply for exercising their Constitutional rights. The policy directs

---

[27] 2019 WL 368471 (Alaska App. 2019).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG
Page 14
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 14 of 18

officers to use the disorderly conduct ordinance in situations where police cannot make an arrest for resisting arrest. The policy states that police should "apply the provisions of the resisting officer laws narrowly, avoiding arrests based solely on subject's lack of cooperation, rudeness, failure to provide identification, or challenge to the officer's authority."[28] Instead, where a person's conduct "did not meet the level required for an arrest under the Municipal Ordinance of Resisting an Officer," disorderly conduct should be considered as an "alternate charge."[29]

The Municipality fails to recognize that lack of cooperation, rudeness, refusing to provide identification, and challenging an officer's authority are all constitutionally protected rights of individuals when dealing with law enforcement. There is no obligation to cooperate with law enforcement in an investigation.[30] The fact that Defendants improperly considered "rudeness" to be an arrestable offense is what brings this matter to court in the first place. It cannot be stressed enough that the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state," and that is a "prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions…."[31] Further, there is no Alaska statute that requires a person, other than the driver of a motor vehicle, to provide identification to law enforcement, and under the United States Constitution a person cannot be compelled to

---

[28] Exhibit 3, Page 1 to Declaration of Thomas Dosik.
[29] Exhibit 3, Page 2 to Declaration of Thomas Dosik.
[30] United States Constitution, 5th Amendment.
[31] *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964).

provide identification unless a police officer has reasonable suspicion that the person is involved in criminal activity.[32] Verbally challenging an officer's authority is an absolutely protected First Amendment right.

Rather than limiting implementation of the ordinance, the Municipality has an official policy of encouraging officers to use the statute to arrest people for exercising their constitutional rights. The Municipality's implementation and interpretation of the ordinance only emphasizes its unconstitutionality.

## 2. Irreparable harm

If a preliminary injunction is not imposed Briggs will suffer irreparable harm. Defendants have shown an eagerness to arrest and prosecute him for exercising his First Amendment rights. Without assurance that the Municipality will not do so again, Briggs is chilled from exercising his rights in the future. Briggs has the right to express criticism of the police to the police but now knows he is subject to arrest and prosecution for doing so.

This chilling of his right to expression is an irreparable harm, he should not be forced to wait for the conclusion of this case before he feels free to once again exercise his rights. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.[33] "The harm is particularly irreparable

---

[32] *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004).
[33] *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG  Page 16
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 16 of 18

where, as here, a plaintiff seeks to engage in political speech."[34]  A colorable First Amendment claim is irreparable injury sufficient to merit relief.[35]

### 3. Balance of Equities.

Defendants will not be harmed by an injunction ordering them not to violate the constitutional rights of Briggs or preventing them from enforcing a plainly unconstitutional ordinance. In fact, Defendants may even benefit by avoiding additional lawsuits and unnecessary expenses. An injunction should not even be necessary, defendants should know the clearly established law and should obey it without specifically being told to do so by a federal court. But defendants have demonstrated their willingness to violate Briggs's rights once and have given no indication that they would refrain from doing so in the future.

Anchorage residents will not be left at the mercy criminal noisemakers if Defendants are enjoined from enforcing the ordinance. Anchorage police officers have the authority to enforce state law as well as municipal ordinances, and under Alaska Statute § 11.61.110, "A person commits the crime of disorderly conduct if … with intent to disturb the peace and privacy of another not physically on the same premises or with reckless disregard that the conduct is having that effect after being informed that it is having that effect, the person makes unreasonably loud noise." This statute suffers from none of the constitutional infirmities of AMC 08.30.120(A)(2).

---

[34] *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).
[35] *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

*Briggs v. Yi*  Memorandum in Support of Motion for Preliminary Injunction
3:22-cv-00265-SLG
Page 17
Case 3:22-cv-00265-SLG   Document 8   Filed 12/22/22   Page 17 of 18

An injunction here satisfies the public interest test because retaliation against a person for exercising free speech rights places a severe burden on the exercise of that right. The video of Officer Yi stating that he arrested plaintiff for calling him a pig has been viewed hundreds of thousands of times on various internet platforms. While an injunction will not obtain such public renown, the public does have a right to know this behavior on the part of police officer is unacceptable and that defendants are at least temporarily enjoined from making arrests based on nothing more than hurt feelings.

## CONCLUSION

For the foregoing reasons, Plaintiff Joshua Briggs respectfully requests that this court enter a preliminary injunction prohibiting them from enforcing AMC 08.30.120(A)(2) against Briggs or any other person.

Done this 22nd day of December, 2022.

>Thomas A. Dosik, LLC
>Attorney for Plaintiff
>
>By: /s/ Thomas A. Dosik
>Thomas A. Dosik
>Alaska Bar No. 9505018