**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JOSHUA D. BRIGGS,

                Plaintiff,

      v.

OREAN YI, in his personal capacity;
and MUNICIPALITY OF
ANCHORAGE,

               Defendants.

Case No. 3:22-cv-00265-SLG

## ORDER RE PENDING MOTIONS

This order addresses each of the four motions pending before the Court.
The primary motion is Plaintiff Joshua Briggs' *Motion and Memorandum in Support
for Preliminary Injunction* at Docket 8. Defendants Orean Yi and the Municipality
of Anchorage responded in opposition to the preliminary injunction motion at
Docket 23, to which Mr. Briggs replied at Docket 26.

Defendants have also filed a *Motion for Partial Summary Judgment* at
Docket 24. Mr. Briggs responded to that motion at Docket 28, requesting that the
Court defer consideration of the motion pursuant to Rule 56(d) of the Federal Rules
of Civil Procedure until after close of discovery. Defendants filed a reply at Docket
34.

Mr. Briggs has filed two additional motions that are ripe for decision. First,
he filed a *Motion for Leave to File Amended Complaint* at Docket 30, to which

Defendants responded in opposition at Docket 33, and Mr. Briggs replied at Docket 35. Second, Mr. Briggs filed a *Motion to Deem Confidentiality Waived or Require Defendants to Provide a Privilege Log* at Docket 31, to which Defendants responded in opposition at Docket 36, and Mr. Briggs replied at Docket 37.

Mr. Briggs requested oral argument with respect to his *Motion and Memorandum in Support for Preliminary Injunction* at Docket 8, but oral argument is not necessary to the Court's determination. Oral argument was not requested with respect to any of the other pending motions and it is not necessary to the Court's determination.

## BACKGROUND

Mr. Briggs alleges violations of his constitutional rights arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution.[1] His claims arise from his arrest on July 12, 2022, for Disorderly Conduct pursuant to Anchorage Municipal Code ("AMC") 08.30.120(A)(2) and Harassment pursuant to AMC 08.10.110(A)(1).[2]

According to Mr. Briggs' unverified complaint, on the day in question, he entered a Holiday Stationstore to purchase a few items and got in line to pay for them behind Officer Orean Yi, who was on duty and in uniform. Mr. Briggs said, "Hey look, it's a pig." Officer Yi turned and assumed a "defensive posture." Mr.

---

[1] Docket 1 at 1.

[2] Docket 1 at 3, ¶ 7, 6, ¶ 20.

Briggs repeated, "What, you're a pig." Mr. Briggs claims that he "could smell alcohol on Yi's breath" and asked whether Officer Yi was drunk, saying that "he would contact Yi's superior to have him sobriety tested." Officer Yi then arrested and handcuffed Mr. Briggs, searched the contents of his wallet without his consent, and put him in the back of a patrol car for more than an hour.[3] The complaint alleges that Mr. Briggs was arrested in retaliation for criticizing a police officer, which he claims is constitutionally protected speech.[4] In his motion for a preliminary injunction, Mr. Briggs explains that the Harassment charge was dismissed for lack of probable cause on September 13, 2022. He also states that he filed a motion contesting probable cause for his Disorderly Conduct charge and that charge was dismissed on December 5, 2022.[5]

Based on these allegations, Mr. Briggs brings this action against Officer Yi in his personal capacity and the Municipality of Anchorage.[6] The complaint contains the following counts: (1) First Amendment retaliation; (2) false arrest; (3) unreasonable search and seizure; (4) municipal liability for failure to train and supervise; (5) punitive damages; and (6) Anchorage Municipal Code

---

[3] Docket 1 at 3–5, ¶¶ 7–17.

[4] Docket 1 at 10–11, ¶¶ 41–47.

[5] Docket 8 at 4.

[6] Docket 1 at 1, 3 at ¶¶ 2–3.

08.30.120(A)(2) is unconstitutional.[7]  Mr. Briggs seeks damages from Officer Yi in his personal capacity and the Municipality of Anchorage, an injunction against enforcement of AMC 08.30.120(A)(2), attorneys fees and costs, and punitive damages.[8]

Defendants' statement of facts differs in several respects from the recitation of facts in Mr. Briggs' complaint and motion for a preliminary injunction.  According to Defendants, "it was Mr. Briggs' conduct, and not the content of his speech, that resulted in charges being brought."[9]  Specifically, Mr. Briggs "raised his voice" and "continued to yell and create loud noise disturbing other customers by acting disorderly."[10]  And according to Defendants, while Mr. Briggs did move the state court to dismiss the Disorderly Conduct charge for failure to show probable cause, that court ruled from the bench that there was probable cause.  Defendants maintain that the state court later dismissed the Disorderly Conduct charge for the convenience of the prosecutor and not for lack of probable cause.[11]

Mr. Briggs's motion for a preliminary injunction seeks an order that would enjoin Defendants "from taking action to prevent him from exercising his first

[7] Docket 1 at 10–18, ¶¶ 41–83.

[8] Docket 1 at 19.

[9] Docket 23 at 2 (quoting Docket 23-1 at 2, ¶ 5).

[10] Docket 23 at 2 (quoting Docket 8 at 8 and Docket 8-1 at 5–6).

[11] Docket 23 at 3–4, 4 n.1.

amendment rights or retaliating against him for doing so." He also requests that Defendants "be preliminarily enjoined from enforcing AMC 08.30.120(A)(2) in any manner."[12]

## JURISDICTION

Mr. Briggs brought this suit pursuant to 42 U.S.C. §§ 1983 and 1985 seeking redress for alleged violations of his federal constitutional rights guaranteed by the First, Fourth, and Fourteenth Amendments. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.[13]

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[14]

The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the

---

[12] Docket 8 at 1.

[13] According to the complaint, this action is also brought pursuant to 42 U.S.C. § 1988, which provides for attorney's fees in proceedings to enforce sections 1983 and 1985. Section 1988, however, does not provide a cause of action.

[14] 555 U.S. 7, 20 (2008).

plaintiff is entitled to such relief."[15]  Thus, a plaintiff "must demonstrate that in the absence of a preliminary injunction, 'the [plaintiff] is likely to suffer irreparable harm before a decision on the merits can be rendered.'"[16]  "Speculative injury does not constitute irreparable injury . . . . [A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."[17]  Moreover, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined," such as a "showing that 'the requested injunction would forestall' the irreparable harm."[18]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test."[19]  Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips *sharply*

---

[15] *Id*. (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[16] *Id*. (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)).

[17] *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted) (first citing *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal*., 739 F.2d 466, 472 (9th Cir. 1984); and then citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

[18] *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

[19] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

in the plaintiff's favor.'"[20]  "Serious questions are 'substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"[21]  They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[22]  All four *Winter* elements must still be satisfied under this approach,[23] but analyses of the last two elements—balance of the equities and consideration of the public interest—merge when the government is the opposing party.[24]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[25]

"Courts asked to issue preliminary injunctions based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing

---

[20] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[21] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)); *see also Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1273 (N.D. Cal. 2014) ("'Serious questions' refers to questions 'which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo . . . .'" (quoting *Gilder*, 936 F.2d at 422)).

[22] *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

[23] *All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary injunction).

[24] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[25] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

likely success on the merits . . . and yet within that merits determination the government bears the burden of justifying its speech-restrictive law."[26] Accordingly, "in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction."[27]

## DISCUSSION

### I. Standing to Seek a Preliminary Injunction

Under Article III of the Constitution, "[t]he jurisdiction of the federal courts is limited to 'cases' and 'controversies.'"[28]  Federal courts enforce this jurisdictional limitation through the doctrine of standing.[29]  A plaintiff bears the burden of demonstrating the "irreducible constitutional minimum of standing," which consists of three elements.[30]  A plaintiff must show (1) an injury in fact, meaning an "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation; and (3) redressability,

---

[26] *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022) (alteration in original) (quoting *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019)).

[27] *Thalheimer*, 645 F.3d at 1116.

[28] *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1138 (9th Cir. 2013) (quoting U.S. Const. art. III, § 2).

[29] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006).

[30] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

meaning that "the injury will likely be redressed by a favorable decision."[31]  The plaintiff "must demonstrate standing separately for each form of relief sought."[32]

"First Amendment challenges 'present unique standing considerations' because of the 'chilling effect of sweeping restrictions' on speech."[33]  These considerations "tilt[] dramatically toward a finding of standing."[34]  "'[T]he Supreme Court has dispensed with rigid standing requirements' for First Amendment protected speech claims and has instead endorsed a 'hold your tongue and challenge now' approach."[35]

Yet even in the First Amendment context, a plaintiff seeking prospective injunctive relief must demonstrate a credible threat of adverse state action.[36] Courts within the Ninth Circuit examine three factors to determine whether a credible threat of enforcement exists: "We consider (1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have

---

[31] *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (citing *Lujan*, 504 U.S. at 560–61).

[32] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[33] *Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (quoting *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)).

[34] *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (alteration in original) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)).

[35] *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)).

[36] *Italian Colors Restaurant*, 878 F.3d at 1171 (first citing *Lopez*, 630 F.3d at 786; and then citing *LSO*, 205 F.3d at 1155).

'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'"[37]

A party seeking injunctive relief "must proffer evidence sufficient to establish a likelihood of irreparable harm."[38]  This evidence must "go[] beyond the unverified allegations of the pleadings and motion papers."[39]  For example, the Ninth Circuit held—in a case much like this one—that a plaintiff who had been charged with a violation of state law had standing to seek injunctive relief on First Amendment grounds, even though her charges were eventually dropped, because she provided testimony that she would continue to engage in expressive activity if not for her fear of adverse state action.[40]  An unverified complaint, however, is not evidence that can support a motion for a preliminary injunction.[41]

---

[37] *Tingley*, 47 F.4th at 1067 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

[38] *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013); *see also Perlot v.* Green, 609 F. Supp. 3d 1106, 1116 (D. Idaho 2022) ("A preliminary injunction may only be awarded 'upon a clear showing' of evidence that supports each relevant preliminary injunction factor.  'This "clear showing" requires factual support beyond the allegations of the complaint . . . .'" (citations omitted)).

[39] 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (3d ed. 2020).  *C.f.* Fed. R. Civ. P. 65(b) (allowing issuance of temporary restraining order without notice only where "specific facts in the affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition").

[40] *Porter v. Martinez*, No. 21-55149, __F.4th__, 2023 WL 2820332, at *4 (9th Cir. Apr. 7, 2023).

[41] *See Perez v. Ryan*, No. CV 19-05602-PHX-MTL (JFM), 2020 WL 995569, at *6 (D. Ariz. Mar. 2, 2020) ("As an initial matter, Plaintiff has failed to present any *evidence* to support his claim for preliminary injunctive relief. Plaintiff's unverified Complaint is not evidence." (internal citations omitted)); *Vardanyan v. Moroyan*, No. C12-05645 HRL, 2013 WL 12091111, at *1 (N.D. Cal. May 1, 2013) ("[Plaintiff] has not supported his motion for TRO with any declarations. He relies almost exclusively upon the allegations of his unverified complaint . . . . None of the other

Here, Mr. Briggs has not filed a verified complaint or any supporting affidavit to demonstrate that he has a credible threat of adverse state action. The unverified complaint does not even appear to allege that Mr. Briggs intends to continue to call a police officer whom he encounters in a public setting a "pig."[42] The sole declaration filed with the motion contains counsel's transcription of a witness interview.[43] In his brief on the motion, counsel for Mr. Briggs asserts that "Defendants' conduct in this case has only strengthened Briggs's belief that police officers are pigs, and he should not [be] dissuaded by the threat of arrest and prosecution from exercising his rights and expressing this belief."[44] But there is no evidence in the record to support this claim.[45] The Court concludes that Mr. Briggs

---

documents appended to his motion have been properly authenticated. . . . On the record presented, the court finds that [plaintiff] has not made a sufficient showing on any of the *Winter* elements."); *Shaterian v. Wells Fargo Bank*, No. C-11-920 SC, 2011 WL 2314151, at *4 (N.D. Cal. June 10, 2011) ("[A] plaintiff may not support a motion for a preliminary injunction by merely pointing to his complaint and the facts alleged therein."); *U.S.A. Express Cab, LLC v. City of San Jose*, No. C-07-06171 RMW, 2007 WL 4612926, at *6 (N.D. Cal. Dec. 31, 2007) ("Arguments in briefing and allegations in unverified complaints cannot serve as the basis for injunctive relief."). *See also Sampson v. Murray*, 415 U.S. 61, 89 (1974) (holding that allegations in unverified complaint did not afford basis for finding of irreparable injury for purpose of preliminary injunctive relief).

[42] *See generally* Docket 1.

[43] *See generally* Docket 8-1.

[44] Docket 26 at 10.

[45] As Mr. Briggs's counsel noted in his reply when characterizing Defendants' briefing as "worthless," "attorney statements are not evidence of any sort [and] a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." Docket 26 at 4 (citing S.*A. Empressa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

has not demonstrated that he has standing for purposes of seeking a preliminary injunction to enjoin enforcement of AMC 08.30.120(A)(2).[46]

## II. Summary Judgment

Defendants seek partial summary judgment on Count VI of the Complaint, which asserts that AMC 8.30.120(A)(2) is unconstitutional.[47]  In response, Mr. Briggs asks that the Court defer consideration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure until after the close of discovery.[48]

The party requesting a Rule 56(d) continuance must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."[49]  The Ninth Circuit has held that "[f]ailure to comply with

---

[46] To be clear, the fact that Mr. Briggs does not have standing to seek a preliminary injunction does not mean that he does not have standing to seek damages.  *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("That Lyons may have been illegally choked by the police . . . while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat [for purposes of seeking injunctive relief.]").  Defendants contend that Mr. Briggs has not shown that he has suffered an injury in fact because the criminal charges underlying his claim were dismissed. Docket 23 at 6.  But the fact that the criminal charges were dropped is insufficient to vitiate standing.  *See, e.g.*, *Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003); *McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012).

[47] Docket 24 at 1.

[48] Docket 28 at 1–2.

[49] *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *State of California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)).  Note that at the time that Family Home & Finance Center was decided, Rule 56(d) was enumerated as 56(f) in the Federal Rules of Civil Procedure.

these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'"[50]

Counsel for Mr. Briggs filed an affidavit with his *Response to Motion for Partial Summary Judgment* in which he asserts that he has "been diligent in pursuing this matter" and explaining that Defendants filed the motion for partial summary judgment before discovery had begun.[51]  Counsel has not identified, however, any specific facts that he hopes to elicit from discovery that are essential to oppose the partial summary judgment motion.  To the contrary, counsel stated in a previous filing that a "First Amendment facial challenge to a statute . . . is not a fact dependent inquiry," emphasizing that "[t]here is no factual inquiry that needs to be undertaken" for purposes of Mr. Briggs' facial challenge.[52]  Indeed, Mr. Briggs' facial challenge to the constitutionality of AMC  8.30.120(A)(2) is a pure question of law and Mr. Briggs has not identified any discoverable facts that would be relevant to resolving this question.[53]  For this reason, several district courts have denied similar discovery requests, explaining that "a facial challenge to the text of

---

[50] *Id.* (quoting *Cal. Dep't of Toxic Substances Control*, 138 F.3d at 779).

[51] Docket 28-1 at 1.

[52] Docket 12 at 4.

[53] *See Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998) (recognizing that "[t]he district court concluded that Pacific did not need to undertake discovery because the issue in this case involved a purely legal question").

a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself."[54]

Because Mr. Briggs did not satisfy any of the three requirements necessary to obtain a continuance pursuant to Rule 56(d), the motion is DENIED. Mr. Briggs is directed to file a supplemental opposition to Defendants' partial summary judgment motion within 21 days of the date of entry of this order.

### III. Motion for Leave to Amend Complaint

Mr. Briggs requests leave to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to assert an additional count alleging that "[t]he Municipality of Anchorage has a practice and custom of using AMC 08.30.120(A)(2) to violate the civil rights of the people in Anchorage."[55] Mr. Briggs filed this motion to amend on March 1, 2023, in advance of the March 10, 2023, deadline set for amendments to pleadings.[56] Rule 15 provides that leave to amend "shall be freely given when justice so requires." Because Mr. Briggs' motion is timely and the Court is directed to freely give leave to amend, the motion is GRANTED.[57]

---

[54] *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 337 (D.D.C. 2005); *see also Shelby County v. Holder*, 270 F.R.D. 16, 19 (D.D.C. 2010) ("Because Shelby County brings only a facial challenge to the [Voter Registration Act], discovery into that claim is unwarranted."). Note that at the time that these two cases were decided, Rule 56(d) was enumerated as 56(f) in the Federal Rules of Civil Procedure.

[55] Docket 30 at 1; Docket 30-1 at 19, ¶ 85.

[56] Docket 25 at 7.

[57] Defendants' principal argument in opposition to this motion is that "[t]he proposed amendment

## IV. Motion to Deem Confidentiality Waived or Require Defendants to Provide a Privilege Log

Mr. Briggs contends that the privilege log that Defendants produced as part of its Initial Disclosures does not meet the minimum requirements of Federal Rule of Civil Procedure 26(b)(5).[58]  Rule 26(b)(5) directs a party withholding information that would otherwise be discoverable based on a claim that it is privileged to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  The Ninth Circuit has explained that "a proper assertion of privilege must be more specific than a generalized, boilerplate objection."[59]

The privilege log provides that Defendants will not produce an unredacted version of Officer Yi's arrest report because it contains an Alaska Public Safety Information Network ("APSIN") number.[60]  Defendants' contention that APSIN numbers are privileged and cannot be produced during discovery in a civil case is remediable by the plain text of Alaska Statute 12.62.180(d)(6), which provides that

---

is futile where Briggs is without standing to assert his claim."  Docket 33 at 2.  This argument may be raised in a motion to dismiss and the Court is  not considering it for purposes of the motion for leave to amend.

[58] Docket 31 at 4.

[59] *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

[60] Docket 31-1 at 3.

"[i]nformation that is sealed under this section may be provided to another person or agency only . . . for a use authorized by . . . court order."[61]  The Court will enter an order that requires that production here.[62]

Defendants also maintain that they cannot produce unredacted versions of Officer Glor's reports because they contain "APSIN numbers, Personal Identification Information, Social Security numbers, Alaska Driver's License numbers etc."[63]  As discussed above, Defendants' concern regarding the APSIN numbers is solved with a Court order.  The remaining personal identification information need not be provided at this time pending entry of a protective order.

Defendants assert that they withheld the audio files of the taped interviews with witnesses because they contain confidential personal identification information, such as social security numbers and Alaska driver's license numbers.[64]  But it appears that at least one such interview has been provided to Mr. Briggs.[65]  Defendants do not explain why it would be impracticable to redact

---

[61] Alaska Stat. § 12.62.180(d)(6) (1994).

[62] In this regard, the Court observes that in his reply, Plaintiff maintains that he "did **not** ask Defendants to provide any of the withheld documents or unredacted versions of the documents"' rather, he stresses that he seeks only for the Court to order that a more detailed privilege log be provided.  Docket 37 at 2 (emphasis in original). But the Court will not order Defendants to produce an additional privilege log that the Court finds unwarranted.  Rather, the Court has strived to resolve the parties' discovery dispute in a way that would accord to both parties "the just, speedy, and inexpensive determination" of this proceeding.  See Rule 1, Federal Rules of Civil Procedure.

[63] Docket 31-1 at 3.

[64] Docket 31-1 at 3.

[65] See Docket 8-1 at 1–2 (explaining that Defendants provided to Mr. Briggs "an audio

this information from the audio files.  If it has not yet done so, Defendants shall produce the requested audio files with appropriate redactions.

With respect to Officer Yi's personnel files and internal affairs files that Defendants withheld, the Court agrees with Mr. Briggs that he is entitled to some of these files.  For example, Officer Yi's records of training, conduct, discipline, and performance are relevant, with appropriate redaction of sensitive personal information, such as Officer Yi's social security number, driver's license number, beneficiary designations, and medical information.[66]  The Court will not, however, require the identification of Bates numbers in a privilege log.  But the Court finds that Defendants are required to provide considerably greater detail in the privilege log to comply with Rule 26(b)(5).  The provided reason for asserting privilege, "personnel information," is too vague to provide the "basis" for the claim of privilege, as Rule 26(b)(5)(B) requires.  Moreover, "personnel and internal affairs files" does not adequately "describe the nature of the documents . . . not produced," as Rule 26(b)(5)(A)(ii) requires.

---

recording, in digital format, of interview of Dana Teeter by Anchorage Police Officer John Glor on August 30, 2022").

[66] *See, e.g.*, *United States v. Henthorn*, 931 F.2d 29, 30–31 (9th Cir. 1991) (holding that "the district court erred in denying plaintiff's discovery request for impeachment material contained in the testifying officers' personnel files" and remanding for *in camera* review of those files); *Soto v. City of Concord*, 162 F.R.D. 603, 614–18 (N.D. Cal. 1995) (compelling discovery of police officer's personnel files, subject to a protective order, explaining that "district courts in the Ninth Circuit have found that the privacy interests police officers have in their personnel files do not outweigh the civil rights plaintiff's need for the documents"); *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011) ("Current case law suggests the privacy interests police officers have in their personnel files do not outweigh plaintiff's interests in civil rights cases.").

The Court will not deem privilege waived at this time.

In sum, within 14 days of the date of this order, Defendants shall:

(1) to the extent not yet produced, produce a redacted version of Officer Yi's arrest report, Officer Glor's reports, and audio files, with redaction of sensitive personal information, but no redaction of APSIN numbers, which are ordered to be produced in this case; and

(2) with respect to Officer Yi's personnel and internal affairs files, the Court directs defendants to either: (a) provide considerably more detail in the privilege log to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and [to] do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"[67] and/or (b) file a motion for a protective order,[68] which includes a proposed protective order.[69]

## CONCLUSION

In light of the foregoing, IT IS ORDERED that:

- Mr. Briggs' *Motion and Memorandum in Support for Preliminary Injunction* at Docket 8 is DENIED for lack of standing.

---

[67] Fed. R. Civ. P. 26(b)(5)(A)(ii).

[68] It is standard practice to file a protective order for discovery of a police officer's personnel and internal affairs files and it is not clear to the Court why this has not been done in this case.

[69] Local Civil Rule 7.1(b).

- With respect to Defendants' *Motion for Partial Summary Judgment* at Docket 24, the Court declines to defer consideration of this motion until after the close of discovery and directs Mr. Briggs to file a supplemental opposition within 21 days of the date of entry of this order.

- Mr. Briggs' *Motion for Leave to File Amended Complaint* at Docket 30 is GRANTED. Mr. Briggs shall file a clean copy of the amended complaint filed at Docket 30-1 within 7 days of the date of entry of this order.

- Mr. Briggs' *Motion to Deem Confidentiality Waived or Require Defendants to Provide a Privilege Log* at Docket 31 is GRANTED in part and DENIED in part as set forth above.

DATED this 12th day of April, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE