# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JOSHUA D. BRIGGS,

                Plaintiff,

      v.

OREAN YI, in his personal capacity;
and MUNICIPALITY OF
ANCHORAGE,

                Defendants.

Case No. 3:22-cv-00265-SLG

## <u>ORDER RE PARTIAL SUMMARY JUDGMENT</u>

Before the Court at Docket 24 is Defendants Orean Yi and the Municipality of Anchorage's *Motion for Partial Summary Judgment*.[1]  Plaintiff Joshua Briggs responded in opposition at Docket 44, to which Defendants replied at Docket 50. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

Mr. Briggs alleges violations of his constitutional rights arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution.[2]  His claims relate to his July 12, 2022, arrest for Disorderly Conduct pursuant to

---

[1] Defendants move for partial summary judgment at Docket 24, incorporating by reference their arguments in *Opposition to Motion for Preliminary Injunction* at Docket 23.

[2] Docket 40 at 1.

Anchorage Municipal Code ("AMC") 08.30.120(A)(2) and Harassment pursuant to AMC 08.10.110(A)(1).[3]  In this Motion, Defendants are seeking summary judgment solely with regard to Mr. Briggs's claim that AMC 08.30.120(A)(2) is facially unconstitutional.

According to Mr. Briggs, on the day in question he entered a Holiday Stationstore to purchase a few items and got in line to pay behind Officer Orean Yi, who was on duty and in uniform.[4]  Upon noticing the officer, Mr. Briggs said, "Oh look, a pig"; Officer Yi turned and assumed an "aggressive stance" and requested Mr. Brigg's identification.[5]  As Officer Yi "leaned closer[,]" Mr. Briggs "could smell alcohol on his breath" and asked whether Officer Yi had been drinking.[6]  Mr. Briggs then stated that he was going to file a complaint with Officer Yi's supervisor; in response, Officer Yi "became increasingly aggressive" and proceeded to arrest Mr. Briggs, search the contents of his wallet without his consent, and put him in the back of a patrol car.[7]  Mr. Briggs was eventually

---

[3] *Id.* at 3, ¶ 7, 6 ¶ 20.

[4] Docket 44-1 at 1, ¶¶ 2–3.

[5] *Id.* at 1, ¶¶ 3–4.

[6] *Id.* at 1–2, ¶ 4.

[7] *Id.* at 1–3, ¶¶ 4–7. Defendants' version of events differs from the facts outlined in Mr. Briggs's amended complaint, opposition, and affidavit. For example, according to Defendants, "it was Mr. Briggs'[s] conduct, and not the content of his speech, that resulted in charges being brought against him."  Docket 23 at 2 (quoting Docket 23-1 at 2, ¶ 5) (citation omitted).  Defendants contend that Mr. Briggs "raised his voice" and "continued to yell and create loud noise disturbing other customers by acting disorderly," prompting arrest and subsequent charges.  *Id.* at 2 (quoting Docket 8 at 8 and Docket 8-1 at 5–6).  Mr. Briggs disputes this, arguing that he maintained a normal volume and tone when speaking with Officer Yi. Docket 44-1 at 2, ¶ 5.

charged with Disorderly Conduct under AMC 08.30.120(A)(2); the Municipality of Anchorage later dismissed this charge, citing "scarce [prosecutorial] resources."[8]

In his amended complaint at Docket 40, Mr. Briggs alleges that he was arrested in retaliation for criticizing a police officer, which he maintains is constitutionally protected speech.[9] Mr. Briggs brings this action against Officer Yi in his personal capacity and the Municipality of Anchorage.[10] The amended complaint contains the following counts: (1) First Amendment retaliation; (2) false arrest; (3) unreasonable search and seizure; (4) municipal liability for failure to train and supervise; (5) punitive damages; (6) facial unconstitutionality of AMC 08.30.120(A)(2); and (7) municipal liability for practice and custom of using AMC 08.30.120 to violate civil rights.[11] Mr. Briggs seeks compensatory damages, punitive damages, and attorney's fees and costs.[12] Mr. Briggs initially sought a

---

Despite these factual discrepancies, because the issues at summary judgment—standing and the facial constitutionality of AMC 08.30.120(A)(2)—are pure questions of law, these disputed facts are not material to the Court's resolution of the *Motion for Partial Summary Judgment*.

[8] Docket 40 at 6, ¶ 20; Docket 23-1 at 3, ¶¶ 5, 7. Mr. Briggs was also charged with Harassment under AMC 08.10.110(A)(1); however, the prosecutor dismissed this charge for lack of probable cause on September 13, 2022. *See* Docket 8-1 at 11–12; Docket 44 at 2.

[9] Docket 40 at 10–11, ¶¶ 41–47.

[10] *See id.* at 2–3, ¶¶ 1–3.

[11] *Id.* at 10–20, ¶¶ 41–93.

[12] *Id.* at 21.

preliminary injunction against enforcement of AMC 08.30.120(A)(2), which the Court denied at Docket 39.[13]

## JURISDICTION

Mr. Briggs brought this suit pursuant to 42 U.S.C. §§ 1983 and 1985 seeking redress for alleged violations of his federal constitutional rights guaranteed by the First, Fourth, and Fourteenth Amendments. The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.[14]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[15]

---

[13] *See generally* Docket 8.

[14] According to the amended complaint, this action is also brought pursuant to 42 U.S.C. § 1988, which provides for attorney's fees in proceedings to enforce sections 1983 and 1985. Section 1988, however, does not provide a cause of action. *See* Docket 40 at 1.

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

# DISCUSSION

## I.  Standing

Under Article III of the Constitution, "[t]he jurisdiction of the federal courts is limited to 'cases' and 'controversies.'"[16]  Federal courts enforce this jurisdictional limitation through the doctrine of standing.[17]  A plaintiff bears the burden of demonstrating the "irreducible constitutional minimum of standing," which consists of three elements.[18]  A plaintiff must show (1) an injury in fact, meaning an "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation; and (3) redressability, meaning that "the injury will likely be redressed by a favorable decision."[19]

"First Amendment challenges 'present unique standing considerations'" because of the 'chilling effect of sweeping restrictions' on speech."[20]  These considerations "tilt[] dramatically toward a finding of standing."[21]  "'[T]he Supreme Court has dispensed with rigid standing requirements' for First Amendment

---

[16] *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1138 (9th Cir. 2013) (quoting U.S. Const. art. III, § 2).

[17] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006).

[18] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[19] *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (citing *Lujan*, 504 U.S. at 560–61).

[20] *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (quoting *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)).

[21] *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (alteration in original) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)).

Case 3:22-cv-00265-SLG   Document 73   Filed 08/17/23   Page 5 of 25

protected speech claims and has instead endorsed a 'hold your tongue and challenge now' approach."[22]

Yet even in the First Amendment context, a plaintiff must demonstrate a credible threat of adverse state action.[23] Courts within the Ninth Circuit examine three factors, outlined in *Thomas v. Anchorage Equal Rights Commission*,[24] to determine whether a credible threat of enforcement exists: (1) whether the plaintiff has a "concrete plan" to violate the law, (2) whether the prosecuting authorities have "communicated a specific warning or threat to initiate proceedings," and (3) whether there is a "history of past prosecution or enforcement under the challenged statute."[25]

Defendants contend that Mr. Briggs does not have standing to challenge AMC 8.30.120(A)(2) for two reasons: (1) he has failed to demonstrate an injury in fact and (2) he has failed to demonstrate a causal connection between any injury and the challenged conduct of Defendants, the enforcement of an alleged facially unconstitutional municipal ordinance.[26] First, Defendants maintain that there is no injury in fact because "[i]t is undisputed that the criminal charges underlying Mr.

---

[22] *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)).

[23] *Italian Colors Rest.*, 878 F.3d at 1171 (citing *Lopez*, 630 F.3d at 786).

[24] 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

[25] *Thomas*, 220 F.3d at 1139 (citation omitted).

[26] Docket 23 at 1–2, 5–7; Docket 50 at 2–3.

Briggs' claim were dismissed."[27]  And since Mr. Briggs "no longer faces any risk of prosecution as a result of the July 12, 2022 incident[,]" the Municipality maintains that he cannot show a credible threat of adverse state action.[28]  This is especially true, according to Defendants, because "almost nobody is actually prosecuted for violations of AMC 8.30.120(a)(2)," explaining that "more than 97% of all cases referred to Anchorage prosecutors by police . . . [are] either declined or dismissed."[29]  Defendants also maintain that AMC 8.30.120(A)(2) does not limit the content of constitutionally protected speech, so there is no credible threat that Mr. Briggs will be prosecuted because of the content of his insults.[30]

Defendants further contend that Mr. Briggs has not presented a sufficiently "imminent injury" because his affidavit fails to outline a "concrete plan" that would violate AMC 08.30.120(A)(2).[31]  Defendants assert that Mr. Briggs has not expressed an "intent to generate loud noise in a public place" that would violate the municipal ordinance in question.[32]  In addition, Defendants express incredulity that Mr. Briggs has "engaged in self-censorship" since arrest.  In support of this position, Defendants highlight that Mr. Briggs was quite vocal while seated in a

---

[27] Docket 23 at 6 (citing Docket 23-1).

[28] *Id.* (citing Docket 23-1).

[29] *Id.* (citing Docket 23-1).

[30] Docket 23 at 7.

[31] Docket 50 at 2.

[32] *Id.* at 3.

Case No. 3:22-cv-00265-SLG, *Briggs v. Yi, et al.*
Order re Partial Summary Judgment
Page 7 of 25
Case 3:22-cv-00265-SLG   Document 73   Filed 08/17/23   Page 7 of 25

police car after his arrest and that he has not been "afraid of commenting publicly" online and to the media since his arrest.[33]

Second, Defendants claim that because Mr. Briggs did not explicitly address the second factor in the standing inquiry, he has failed to show a causal connection between his injury and the enforcement of AMC 08.30.120(A)(2).[34]

In opposition, Mr. Briggs submits an affidavit and accompanying exhibits, contending that he faces a credible threat of adverse state action. Mr. Briggs states that since his arrest he has "not fe[lt] free to express criticism to any police officer, no matter the circumstances[,]" and he "will not do so for fear of arrest and prosecution under the disorderly conduct statute."[35] Specifically, Mr. Briggs asserts that on "a recent trip to the park with [his] dog," he observed police officers standing in the street and he felt that "their behavior was causing a safety issue."[36] However, Mr. Briggs felt "hesitant to speak up" and decided not to communicate with the officers because he "was certain that this encounter would end" in a similar way to his encounter with Officer Yi.[37]

---

[33] *Id.* at 3–6.

[34] *Id.* at 3.

[35] Docket 44-1 at 3, ¶ 13.

[36] *Id.* at 3, ¶ 14.

[37] *Id.* at 3, ¶14.

Case 3:22-cv-00265-SLG   Document 73   Filed 08/17/23   Page 8 of 25

Two cases from the Ninth Circuit guide this Court's injury-in-fact analysis. In *Porter v. Martinez*, Susan Porter drove past a group of protestors and honked in support.[38]  Shortly thereafter, a sheriff's deputy pulled her over and gave her a citation for misuse of a vehicle horn, which was a violation of a California state law that prohibited honking except when reasonably necessary to warn of a safety hazard.  Even though Porter's citation was eventually dismissed, the Ninth Circuit held that she had standing to assert a First Amendment claim challenging the statute.[39]  The Ninth Circuit reasoned that, because Porter provided testimony that she would have continued to engage in honking as an expressive activity but for her fear of adverse state action, her testimony was specific enough to show that her expressive activity "[was] being chilled."[40]  Further, the Ninth Circuit held that even if, as the government argued, the "odds of anyone being cited for honking" were "vanishingly small[,]" Porter possessed an actual and well-founded fear that this challenged statute would again be enforced against her as evidenced by the citation she had already received.[41]  As a result, Porter's reported "self-censorship" constituted a sufficiently concrete injury.

---

[38] 68 F.4th 429, 435 (9th Cir. 2023).

[39] *Porter*, 68 F.4th at 435, 438.

[40] *Id.* at 437.

[41] *Id.* at 437–38.

Case 3:22-cv-00265-SLG   Document 73   Filed 08/17/23   Page 9 of 25

In *McCormack v. Hiedeman*, the Ninth Circuit considered a similar question.[42]  Jennie Linn McCormack was alleged to have purchased medication over the internet to terminate her pregnancy.  The State of Idaho charged her with a violation of Chapter 6 of the Idaho Code, which made it a felony to undergo an unauthorized abortion procedure.[43]  The Idaho state court dismissed the criminal complaint without prejudice several months later.  McCormack pursued a class action lawsuit in federal court and the district court issued a preliminary injunction restraining the prosecuting attorney from enforcing several subsections of Chapter 6.[44]  The Ninth Circuit affirmed, holding that McCormack faced a genuine threat of prosecution under those subsections of Chapter 6 and one additional subsection of that chapter, notwithstanding the fact that the charges had been dropped.  The Circuit pointed out that the charges were dismissed without prejudice and the prosecutor "filed a declaration stating that he may still re-file the complaint" against McCormack.  Moreover, her past prosecution "weigh[ed] in favor of a preliminary injunction for McCormack."[45]

Similarly, in this case, Mr. Briggs was charged with violating AMC 08.30.120(A)(2), his charges were dismissed due to limited prosecutorial

---

[42] 694 F.3d 1004 (9th Cir. 2012).

[43] *Id.* at 1007–08.

[44] *Id.* at 1007.

[45] *Id.* at 1020–22.

resources, and then he filed this First Amendment challenge. With respect to the first *Thomas* factor, as in *Porter*, Mr. Briggs provided specific allegations by way of his affidavit demonstrating that he has a "concrete plan" to continue to engage in the same conduct that resulted in his arrest. Although Defendants maintain that Mr. Briggs's desire to engage in lawful activity—speaking with a police officer—does not amount to a specific and imminent injury, the Court disagrees. Rather, Mr. Briggs's fear that his lawful interaction with the police may result in the same type of charge under the challenged ordinance is a sufficiently specific and imminent injury. As in *Porter*, Mr. Briggs states that he would persist in the conduct that precipitated his charges under the municipal code but for his fear of being charged with the same offense. Mr. Briggs has therefore satisfied the first *Thomas* factor, alleging a sufficiently concrete plan to engage in the same conduct that led to his charge under AMC 08.30.120(A)(2).

Turning to the second *Thomas* factor, as in *McCormack*, the prosecutor "communicated a specific threat" to bring charges when the prosecutor "actually brought a criminal complaint" against Mr. Briggs.[46] Defendants' argument that 97% of cases brought pursuant to AMC 08.30.120(A)(2) are declined or dismissed is unavailing. In *Ward v. Utah*, the Tenth Circuit reversed the district court's determination that Ward lacked standing to challenge the constitutionality of a

---

[46] *See id.* at 1022.

hate-crimes statute.[47] The Tenth Circuit explained that Ward would not have standing if, for example, the prosecutor determined that the underlying statutes did "not apply to Ward's protesting activities" or if the "defendants admitted that they misinterpreted the challenged statute to apply to the plaintiff's conduct in the past."[48] Unlike in those instances, Defendants here have not alleged that AMC 08.30.120(A)(2) does not apply to Mr. Briggs's conduct, nor that Mr. Briggs would be unlikely to be arrested in the future for violating AMC 08.30.120(A)(2). Instead, Defendants contend that if he were arrested and charged again for disorderly conduct, it is unlikely that he would be prosecuted due to limited prosecutorial resources. This is not enough to show that Mr. Briggs does not face a credible threat of future criminal arrest.[49]

With respect to the third *Thomas* factor, the fact that a criminal complaint was filed against Mr. Briggs weighs in his favor, as in *McCormack*. In sum, Mr.

---

[47] 321 F.3d 1263, 1264 (10th Cir. 2003). Ward, an animal-rights activist, was charged with disorderly conduct after participating in an animal-rights demonstration. After his charges were dismissed, Ward filed suit under 42 U.S.C. § 1983, alleging statutes underlying his charges violated the First Amendment. For clarity, the Court shall refer to this case as *Utah* in its short form citations because this order later references the similarly named case of *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

[48] *Utah*, F.3d at 1268 (first citing *Faustin v. City & County of Denver*, 268 F.3d 942, 946 (10th Cir. 2001) then citing *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002)).

[49] A criminal arrest alone may constitute adverse state action. "[A] threat of government prosecution is credible if the government has indicted or arrested the plaintiffs, . . . if 'prosecuting authorities have communicated a specific warning or threat to initiate proceedings' under the challenged speech restriction, or if there is a 'history of past prosecution or enforcement under the challenged statute.'" *Lopez*, 630 F.3d at 786 (first citing *Younger v. Harris*, 401 U.S. 37, 41–42 (1971); then quoting *Thomas,* 220 F.3d at 1139; and then citing *Steffel v. Thompson,* 415 U.S. 452, 459 (1974)).

Briggs "faces a credible threat of future prosecution and suffers from an injury in the form of a 'chilling effect' on his desire to engage in First Amendment activities."[50]

On the issue of causation, the Court finds that Mr. Briggs has demonstrated a causal connection between his alleged injury and the challenged action of Defendants.[51]  As evinced in the foregoing analysis, Mr. Briggs has sufficiently demonstrated that he has a well-founded fear that the municipal ordinance will be enforced against him if he participates in certain expressive activity.[52]  In conclusion, because these considerations "tilt[] dramatically toward a finding of standing," the Court finds that Mr. Briggs has standing to bring a facial challenge to the constitutionality of AMC 08.30.120(A)(2).[53]

## II.    Facial Challenge to AMC 8.30.120(A)(2)

Defendants move for partial summary judgment on Count VI of the amended complaint, which asserts that AMC 8.30.120(A)(2) is facially unconstitutional because it is "overbroad and vague."[54]  AMC 8.30.120(A)(2) provides that it is

---

[50] *Utah*, 321 F.3d at 1269 (citations omitted).

[51] *See Lujan*, 504 U.S. at 560.

[52] Docket 44 at 23–24; Dkt. 44-1 at 3–4, ¶¶ 12–17.

[53] *Lopez*, 630 F.3d at 781 (alteration in original) (quoting *Stroh*, 205 F.3d at 1155).

[54] *See* Docket 24 at 1; *see also* Docket 40 at 16 ¶ 80.  Since filing the *Motion for Partial Summary Judgment*, Mr. Briggs filed an amended complaint at Docket 40, Count IV remains the same in both filings.  *Compare* Docket 1 at 16–18, ¶¶ 80–83, *with* Docket 40 at 16–18, ¶¶ 80–83.

"unlawful for any person to . . . [k]nowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others."  The ordinance defines "loud noise[] in a public place" as "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."[55]  A "public place" is "a place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place which is not a private place."[56]

When considering a First Amendment challenge to an ordinance regulating expression in a public forum, courts must first determine whether the law is content based or content neutral.  The "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [its agreement or] disagreement with the message [the regulation] conveys."[57]  "The 'crucial first step' in determining whether a law is content based is to 'consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.'"[58]  Here, the Court agrees with the parties

_____

[55] AMC 8.30.120(B)(2).

[56] AMC 8.30.120(B)(3).

[57] *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)).

[58] *Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) (quoting *Reed v.*

that the ordinance is facially content neutral.[59]  The plain language of AMC 8.30.120(A)(2) prohibits a person from creating a "loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others."  It does not draw distinctions based on the message a speaker conveys and instead regulates the volume and manner in which a person may express themselves in public settings.

Consequently, to pass constitutional muster, AMC 8.30.120(A)(2) must survive intermediate scrutiny.  In other words, the ordinance's "restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest[,]'"[60] "unrelated to the suppression of free expression," and its "incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest."[61]  To be "no more burdensome" than necessary, an ordinance "'need not be the least restrictive or least intrusive means' of serving that interest.  But the '[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on

---

*Town of Gilbert*, 576 U.S. 155, 163–65 (2015)).

[59] Docket 44 at 6; Docket 50 at 8.

[60] *City of Austin v. Reagan Nat'l Advert. of Austin*, LLC, 142 S. Ct. 1464, 1471 (2022) (quoting *Rock Against Racism*, 491 U.S. at 791).

[61] *Porter*, 68 F.4th at 439 (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

speech does not serve to advance its goals.'"[62]  The ordinance must therefore "leave open ample alternative channels for communication of the information."[63]

In this case, Defendants contend that Mr. Briggs's facial challenge to the ordinance fails as a matter of law because AMC 8.30.120(A)(2) furthers a "substantial interest in protecting its citizens from unwelcome noise."[64] Specifically, Defendants assert that the Municipality of Anchorage "may legitimately exercise its police powers to advance esthetic values" because, as the Supreme Court has recognized, local governments have "a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression."[65] According to Defendants, the esthetic interest at issue in this case is "noise regulation," which is a legitimate exercise of the state's police power.[66]

Defendants also maintain that the ordinance is narrowly tailored to serve this interest because of the ordinance's scienter requirement, which requires a potential offender to create a loud noise "with the intent to disturb others or in reckless disregard of the peace and privacy of others."[67]  Additionally, Defendants

---

[62] *Id.* at 443 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

[63] *Id.* (quoting *Clark*, 468 U.S. at 293).

[64] Docket 50 at 10.

[65] *Id.* (quoting *Members of City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 806 (1984)).

[66] *Id.* (first citing *Kovacs v. Cooper,* 336 U.S. 77 (1949); and then citing *Berman v. Parker,* 348 U.S. 26, 32–33 (1954)).

[67] *See* Docket 23 at 10.

contend that the ordinance "leaves open ample alternative channels for communication of speech directed at police officers" because the ordinance merely controls the volume of the communication and does not attempt "to ban any particular manner or type of expression at any given place or time," thereby permitting Mr. Briggs and other residents of the Municipality many other adequate "avenues of communication."[68]

In response, Mr. Briggs asserts that Defendants have "not met their burden" to demonstrate a "substantial government interest" that might justify AMC 8.30.120(A)(2)'s restriction on expression.[69]  In support of this argument, Mr. Briggs cites *Ward v. Rock Against Racism*,[70] stating that "the validity of [a] regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case."[71]

Mr. Briggs also contends that, even if the Court finds the Municipality has a "substantial government interest" to protect the public from "unwelcome noise," the ordinance is "not narrowly tailored to meet this interest."[72]  Mr. Briggs reasons that

---

[68] Docket 50 at 11 (citing *Clark*, 468 U.S. at 293).

[69] Docket 44 at 6–7.

[70] 491 U.S. 781, 801 (1989).

[71] Docket 44 at 8 (citation omitted).

[72] *Id*.

the "scienter requirement does not save the ordinance" because the municipal code does not define the terms "knowingly" or "reckless," rendering it both overbroad and vague.[73]  In support, Mr. Briggs gives various examples of potential ordinance violators, such as a speaker at a political rally, a band or DJ playing in a bar, or a high school sports announcer.[74]  Mr. Briggs ultimately concludes that although "AMC 08.30.120 does give fair notice of the conduct it purports to punish . . . it is so overbroad and criminalizes so much quotidian activity that it cannot be enforced as written."[75]

The Supreme Court's holding in a similar case is instructive.  In *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*,[76] several supporters of a candidate for election to the Los Angeles City Council challenged an ordinance that prohibited the posting of signs on public property.  Upholding the ordinance, the United States Supreme Court confirmed that "the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest," such as the advancement of "esthetic values."[77]  The Court explained that governments "may legitimately exercise [their] police powers" to promote the public

---

[73] *Id.* at 10.

[74] *Id.* at 10–11.

[75] *Id.* at 13.

[76] 466 U.S. 789 (1984).

[77] *Id.* at 804–05.

Case No. 3:22-cv-00265-SLG, *Briggs v. Yi, et al.*
Order re Partial Summary Judgment
Page 18 of 25

welfare, and noted that "[t]he concept of the public welfare is broad and inclusive," representing "spiritual . . . [,] physical, aesthetic[,] . . . [and] monetary" values.[78] Reasoning that "municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression," the Court denied the facial challenge to the ordinance.[79]

Similarly, in *Kovacs v. Cooper*,[80] Charles Kovacs mounted a facial and as applied challenge to a city ordinance that prohibited the use of sound amplifying devices that made "loud and raucous" noises on public streets or thoroughfares, arguing that the ordinance was "vague, obscure and indefinite."[81] The Supreme Court rejected this challenge and held that the city had a substantial interest in protecting its citizens from loud noise; the Court reasoned that "[t]he police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community."[82]

After considering this caselaw, the Court concludes that AMC 08.30.120(A)(2) furthers a significant governmental interest that is unrelated to the

---

[78] *Id.* at 805.

[79] *Id.* at 806.

[80] 336 U.S. 77 (1949).

[81] *Id.* at 78–79.

[82] *Id.* at 83.

suppression of free expression. The plain language of the ordinance seeks to curtail "loud noise in a public place," defining a "loud noise" as "loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."[83] *Taxpayers for Vincent* establishes that the government may "legitimately exercise its police powers to advance esthetic values" and promote a broad concept of the public welfare.[84] And *Kovacs* demonstrates that the Municipality of Anchorage has a "substantial interest in protecting its citizens from loud noise."[85] AMC 08.30.120(A)(2) furthers this interest by regulating excessive noise.

The Court also finds that AMC 08.30.120(A)(2) is narrowly tailored to further this substantial interest. In *Porter*, the Ninth Circuit held that the plain language of the honking statute was narrowly tailored to further California's interest in traffic safety. The Court reasoned that, by banning any honking other than "when reasonably necessary to [e]nsure safe operation" of a vehicle, the state "did no more than eliminate the exact source of the evil it sought to remedy."[86]

AMC 08.30.120(A)(2) is similarly limited in scope to restrict excessive noise in the community. And, like the statute upheld in *Porter*, AMC 08.30.120(A)(2)

---

[83] AMC 08.23.120(A)(2), (B)(2).

[84] *Taxpayers for Vincent*, 466 U.S. at 805.

[85] *Id.* at 806 (citing *Kovacs*, 366 U.S. 86–87).

[86] *Porter*, 68 F.4th at 446–47 (alteration in original) (citing *Taxpayers for Vincent*, 466 U.S. at 808).

Case No. 3:22-cv-00265-SLG, *Briggs v. Yi, et al.*
Order re Partial Summary Judgment
Page 20 of 25

includes a limiting requirement.[87]  Here, the ordinance prohibits a person from "*[k]nowingly*" generating a loud noise "with the intent to disturb others" or acting "in *reckless* disregard of the peace and privacy of others."[88]  The ordinance thus limits noise only in instances where a person has the requisite, specifically defined scienter.

Further, neither the ordinance's definition of "loud noise," nor its scienter terms are vague.  The term "loud noise," as defined by the ordinance,[89] is specifically and narrowly defined.  And, despite Mr. Briggs's assertions to the contrary, both "knowingly" and "reckless" are relatively common scienter terms found throughout state and municipal penal codes.[90]  For example, the notes at the end of the AMC 08.30.120 reference Alaska Statute 11.61.110 (Disorderly Conduct), which uses the same scienter terms as the municipal ordinance.[91]

---

[87] *Id.* at 435 (California law provides: "[t]he driver of a motor vehicle *when reasonably necessary to insure safe operation* shall give audible warning with his horn") (emphasis added).

[88] AMC 08.30.120(A)(2) (emphasis added).

[89] A loud noise is a "noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place." AMC 8.30.120(B)(2).

[90] *See* AS 11.81.900(a)(3); AS 11.81.900(a)(2); *see also, e.g.*, *Johnson v. State*, 224 P.3d 105, 108 (Alaska 2010) (defining the term "reckless" as it pertains to criminal liability); *State v. Strane*, 61 P.3d 1284, 1288 (Alaska 2003) (discussing the term "knowingly" as it relates to criminal acts).

[91] *Compare* AMC 08.30.120(A)(2) ("Knowingly generate loud noise in a public place with the **intent to disturb** others or in **reckless disregard** of the peace and privacy of others."), *with* AS 11.61.110 ("A person commits the crime of disorderly conduct if . . . with **intent to disturb** the peace and privacy of another not physically on the same premises or with **reckless disregard** that the conduct is having that effect after being informed that it is having that effect, the person makes unreasonably loud noise.") (emphasis added).

Although the ordinance does not define the terms "knowingly" or "reckless," state law does:

> **Knowingly:** "a person acts 'knowingly' with respect to conduct or to a circumstance described by a provision of law defining an offense *when the person is aware that the conduct is of that nature or that the circumstance exists*."[92]

> **Reckless:** "a person acts 'recklessly' with respect to a result or to a circumstance described by a provision of law defining an offense when *the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists*."[93]

Therefore, the Court determines that the ordinance and its terms are not vague.

Mr. Briggs also claims that AMC 08.30.120(A)(2) is facially overbroad.[94] When considering a facial challenge under the First Amendment, a law may be invalidated "as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"[95] The challenging party "need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law.' The overbreadth doctrine exists 'out of concern

---

[92] AS 11.81.900(a)(2) (emphasis added).

[93] AS 11.81.900(a)(3) (emphasis added).

[94] *See, e.g.*, Docket 44 at 13.

[95] *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

that the threat of enforcement of an overbroad law may deter or "chill" constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions.'"[96] Ultimately, when assessing First Amendment facial challenges, the Court must not "apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of *arguable* overbreadth of the contested law."[97]

Considering this, the Court finds Mr. Briggs's proffered hypotheticals, involving seemingly innocent individuals that he asserts could be prosecuted under the ordinance, fail to show arguable statutory overbreadth.[98] None of these theoretical situations shows either a knowing or reckless intent to invade the peace of others, as required by the statute. Therefore, none of these hypotheticals satisfies the *mens rea* required to violate the ordinance. Accordingly, Mr. Briggs has not arguably demonstrated the ordinance's overbreadth.[99]

---

[96] *Id.* at 944 (first quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6; and then quoting *Virginia v. Hicks,* 539 U.S. 113, 119 (2003)).

[97] *Wash. State Grange*, 552 U.S. at 449 n.6 (emphasis added) (citing *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988)). "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the overbreadth doctrine is considered to be "strong medicine" and should be applied "only as a last resort." *New York v. Ferber*, 458 U.S. 747, 769 (1982).

[98] For example, Mr. Briggs contends that a "speaker at a political rally[,]" "an announcer at a sporting event[,]" "a band or DJ playing in a bar[,]" a "Salvation army bell ringer[,]" and a "pilot flying a cargo jet out of Ted Stevens [airport]" would all be violators of AMC 08.30.120(A)(2). Dkt. 44 at 10–11.

[99] *See New York v. Ferber*, 458 U.S. 747, 770 n.25 (1982) (citing *Parker v. Levy*, 417 U.S. 733, 760 (1974) ("This Court has . . . repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First

Finally, AMC 08.30.120(A)(2) leaves open ample alternative channels for people to communicate their ideas and messages. In *Porter*, Porter argued that the honking statute "prevent[ed] spontaneous communication by drivers about protests or other events" and thus restricted the opportunity for alternative communication channels.[100] However, the Ninth Circuit concluded that "common sense and Porter's own testimony indicate[d] otherwise" because Porter testified that she and other politically-minded drivers may alternatively "park their cars and attend political demonstrations on foot."[101] In addition, the Ninth Circuit suggested that, instead of honking and violating the state statute in question, drivers may "express agreement with protestors from their cars by waving, giving a thumbs up, or raising a fist as they drive by."[102]

Here, as in *Porter*, Mr. Briggs has various alternative methods of communication available to him that do not violate AMC 08.30.120(A)(2). The ordinance, on its face, seeks to temper an individual's volume—and not the content of the communication or the channel of communication. Mr. Briggs is therefore free to communicate his sentiments about law enforcement in myriad other ways, such as engaging with the news media, speaking at an appropriate volume with

---

Amendment values, facial invalidation is inappropriate if the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .'").

[100] *Porter*, 68 F.4th at 447.

[101] *Id.*

[102] *Id.*

fellow citizens in public, and posting on social media; all of which are communication methods that would not expose him to prosecution under the plain language of the ordinance.[103]

In sum, although Mr. Briggs has standing to facially challenge the constitutionality of AMC 08.30.120(A)(2), after applying intermediate scrutiny, the Court concludes that the ordinance is not facially unconstitutional.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that

Defendants' *Motion for Partial Summary Judgment* at Docket 24 is GRANTED with respect to Count VI; AMC 08.30.120(A)(2) is not facially unconstitutional.

DATED this 17th day of August 2023, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[103] Mr. Briggs has recently engaged with the news media. *See* Docket 43-4 (Anchorage Daily News article published April 9, 2023).