# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

JOSHUA D. BRIGGS,

                Plaintiff,

       v.

OREAN YI, in his personal capacity,       Case No. 3:22-cv-00265-SLG
*et al.*,

                Defendants.

## ORDER ON ALL PENDING MOTIONS

Before the Court are four pending motions. At Docket 122 is Defendants' Motion for Summary Judgment.[1] Plaintiff Joshua Briggs responded at Docket 139; Defendants replied at Docket 143. At Docket 125 is Mr. Briggs's Motion for Partial Summary Judgment.[2] Defendants responded at Docket 138; Mr. Briggs replied at Docket 142. Mr. Briggs also filed a Motion to Preclude Expert Testimony at Docket 124. Defendants responded at Docket 129; Mr. Briggs replied at Docket 133. And, at Docket 132, Defendants moved for an evidentiary hearing on the Motion to Preclude Expert Testimony; Mr. Briggs responded in opposition at Docket 135. Oral argument was not requested and was not necessary to the Court's disposition.

---

[1] Defendants are Anchorage Police Department Officer Orean Yi and the Municipality of Anchorage (the "Municipality").

[2] *See also* Docket 134 (Suppl. to Mot. for Summ. J.).

# BACKGROUND

This case is about an incident that occurred between Defendant Anchorage Police Department ("APD") Officer Yi and Mr. Briggs at a gas station on July 12, 2022. Officer Yi described the gas station as a "hot bed" for drugs, prostitution, and misconduct involving weapons.[3] The morning of July 12, Officer Yi was standing in line inside the gas station to buy a coffee.[4] There were two people in line in front of him. Officer Yi then heard a man behind him, Mr. Briggs, say "Oh, it's a pig."[5] Mr. Briggs recalled that he was then three to four feet behind Officer Yi.[6] Mr. Briggs was holding canned energy drinks in both of his hands.[7] Officer Yi turned around and, in Officer Yi's recollection, asked if he could help Mr. Briggs.[8] Mr. Briggs disputes that Officer Yi said this, and instead remembers that Officer Yi said "We're going to make a day of it."[9] In Officer Yi's recollection, Mr. Briggs responded with something like "You're a fucking pig, get back in line," to which Officer Yi then asked, "What's going on?"[10] At that point, according to Mr. Briggs,

---

[3] Docket 122-2 at 6-7 (Yi Dep.).

[4] Docket 122-2 at 5-6 (Yi Dep.); Docket 122-5 at 2.

[5] Docket 122-2 at 6 (Yi Dep.); Docket 139-2 at 2 (Briggs Dep.) ("I think I muttered under my breath, "Oh, look. It's . . . another pig.").

[6] Docket 139-2 at 3 (Briggs Dep.).

[7] Docket 122-2 at 6 (Yi Dep.); Docket 122-3 at 5 (Briggs Dep.).

[8] Docket 122-2 at 6 (Yi Dep.).

[9] Docket 139-2 at 4 (Briggs Dep.).

[10] Docket 122-2 at 6 (Yi Dep.).

he was only "inches away" from Officer Yi and he smelled alcohol emanating from Officer Yi's mouth.[11] But Officer Yi recalled that he and Mr. Briggs were still three to four feet away at this point.[12] Mr. Briggs asked him if he was drunk.[13] Officer Yi recalled that Mr. Briggs also asked him if he understood English.[14] Officer Yi also recalled asking if Mr. Briggs wanted to smell him and if Mr. Briggs smelled alcohol.[15] Officer Yi blew in Mr. Briggs's face, and Mr. Briggs responded that he was going to contact Officer Yi's supervisor.[16]

There were several people behind Mr. Briggs in line at the gas station; Officer Yi's report indicated that the other patrons "stopped what they were doing and watched"; however, at his deposition, Officer Yi testified that the other patrons put down their items and left.[17] Officer Yi decided at that point that he needed "to take action," so he asked Mr. Briggs for his name.[18] Mr. Briggs stated that, at that point, he saw that Officer Yi was "starting to become enraged" so he was "going to

---

[11] Docket 139-2 at 4-5 (Briggs Dep.).

[12] Docket 139-3 at 31 (Yi Dep.).

[13] Docket 122-2 at 6 (Yi Dep.); Docket 139-2 at 6 (Briggs Dep.).

[14] Docket 122-2 at 6 (Yi Dep.).

[15] Docket 122-2 at 8 (Yi Dep.).

[16] Docket 122-2 at 8 (Yi Dep.); Docket 139-2 at 6 (Briggs Dep.).

[17] *Compare* Docket 122-5 at 5, *with* Docket 122-2 at 8-9 (Yi Dep.).

[18] Docket 122-2 at 9 (Yi Dep.).

actually leave and walk away."[19] He asked if he was being detained.[20] Officer Yi recalled that he replied, "Yes, you are detained."[21]

Mr. Briggs described that, after Officer Yi indicated that he was going to detain him, Mr. Briggs told Officer Yi that he would pay for his drinks and walk away, but then Officer Yi stepped in front of Mr. Briggs and "chest bumped" him.[22] Officer Yi arrested Mr. Briggs, took him outside, patted him down, and placed him in Officer Yi's patrol car.[23] After completing his paperwork, Officer Yi released Mr. Briggs.[24]

Officer Yi also testified that, during the encounter, he twice told Mr. Briggs that Mr. Briggs was harassing him.[25] And Officer Yi recalled that Mr. Briggs was "squaring off" and puffed out his chest and raised his chin.[26] Officer Yi described that he believed Mr. Briggs was challenging him to a fight.[27] Officer Yi also stated that Mr. Briggs's voice was "modulating," he was trembling, and his arms were

---

[19] Docket 139-2 at 6 (Briggs Dep.).

[20] Docket 139-2 at 6 (Briggs Dep.).

[21] Docket 122-2 at 9 (Yi Dep.).

[22] Docket 139-2 at 7 (Briggs Dep.).

[23] Docket 122-2 at 9 (Yi Dep.).

[24] Docket 122-2 at 9-10 (Yi Dep.).

[25] Docket 122-2 at 6-7 (Yi Dep.).

[26] Docket 122-2 at 6 (Yi Dep.); *see also* Docket 139-3 at 34 (Yi. Dep.).

[27] Docket 122-2 at 12 (Yi Dep.).

shaking.[28]  Officer Yi's report indicated that Mr. Briggs "raised his voice" and "yell[ed]" at him.[29]  But Mr. Briggs recalled that he initially muttered under his breath and that his voice was never louder than a conversational level.[30]  During an investigatory interview in August 2022, a gas station employee—working at a computer behind the counter next to the register where customers were paying for their items—stated that he was about 15 feet away from Mr. Briggs during the encounter and he could not hear what Mr. Briggs was saying.[31]  He stated that there was "no yelling."[32]  There are no audio or video recordings of the encounter inside the gas station.[33]

Officer Yi filed charges against Mr. Briggs for disorderly conduct under Anchorage Municipal Code ("AMC") 08.30.120(A)(2) and harassment under AMC 08.10.110;[34] he testified at his deposition that he could have also arrested Mr. Briggs for assault in the fourth degree.[35]  At his initial appearance in state court in

---

[28] Docket 122-2 at 5, 12 (Yi Dep.).

[29] Docket 122-5 at 5; Docket 139-3 at 23 (Yi Dep.) ("It was loud enough so everybody left the store.").

[30] Docket 139-2 at 2, 7 (Briggs Dep.).

[31] Docket 125-8 at 10-11.

[32] Docket 125-8 at 14.

[33] Docket 122-10 at 3 ("Officer Yi was not wearing his remote microphone in the store."); Docket 122-5 at 6 ("[T]here w[as] no security footage available because there was a technician who was currently repairing the cameras.").

[34] Docket 122-5.

[35] Docket 122-2 at 4 (Yi Dep.).

September 2022, Mr. Briggs argued that there was no probable cause for his arrest for disorderly conduct and his speech was protected by the First Amendment.[36] The state court ruled from the bench that probable cause existed on the disorderly conduct charge because Mr. Briggs's conduct was with reckless disregard for the peace and privacy of others.[37] The probable cause statement included with the information charging Mr. Briggs with disorderly conduct and harassment was filed after the investigatory interview of the gas station employee occurred.[38] However, the probable cause statement did not include information about the interview, and it asserted that Mr. Briggs "continued to yell and create loud noise disturbing the other customers by acting disorderly."[39] The state court dismissed the harassment charge for lack of probable cause.[40] The disorderly conduct charge was later dismissed for prosecutorial convenience.[41]

---

[36] Docket 122-9 at ¶ 6 (Elkinton Decl.).

[37] Docket 122-9 at ¶ 6 (Elkinton Decl.).

[38] *Compare* Docket 122-5 at 3 (information dated September 8, 2022), *with* Docket 125 at 9 (noting that the gas station employee investigatory interview was conducted on August 31, 2022).

[39] Docket 122-5 at 3.

[40] Docket 116 at ¶ 36; Docket 119 at ¶ 36. It is unclear when the harassment charge was dismissed, but the record suggests it was during the same hearing in which the state court assessed the disorderly conduct charge. *See* Docket 122-10 at 3 ("Although after being reviewed by the judge the harassment charge was dismissed with a finding of no probable cause, the disorderly conduct [charge] was allowed to proceed.").

[41] Docket 122-9 at ¶ 7 (Elkinton Decl.).

In December 2022, Mr. Briggs sued Officer Yi and the Municipality of Anchorage under 42 U.S.C. § 1983.[42] Mr. Briggs's Second Amended Complaint asserts claims for First Amendment retaliation, false arrest, and unreasonable search and seizure.[43] Mr. Briggs also raises a claim against the Municipality for an unconstitutional failure to train and supervise and an unconstitutional practice and custom.[44] Mr. Briggs also seeks punitive damages against Officer Yi.[45]

Defendants move for summary judgment on all of Mr. Briggs's claims on the merits and alternatively argue that Officer Yi is entitled to qualified immunity.[46] Mr. Briggs cross-moves for partial summary judgment that Officer Yi lacked probable cause to arrest Mr. Briggs for disorderly conduct or assault.[47] Mr. Briggs maintains

---

[42] Docket 1.

[43] Docket 116 at ¶¶ 41-55.

[44] Docket 116 at ¶¶ 56-76, 84-93. The Second Amended Complaint also included a ratification theory of liability against the Municipality. Docket 116 at ¶¶ at 94-104. The Court previously found that "the facts in the PAC, standing alone, fail to state a plausible ratification claim because the PAC does not allege that the basis for the alleged constitutional violation by Officer Yi was a policy or practice of APD that is evidenced by the subsequent ratification of the final policymaker." Docket 115 at 9-10. As such, the Court reiterates here that while Mr. Briggs is proceeding on his claim against the Municipality under theories of failure to train and practice and custom, he has inadequately pled facts supporting a ratification theory of liability in Count VIII.

[45] Docket 116 at ¶¶ at 77-79. Mr. Briggs also made a facial constitutional challenge to AMC 08.30.120(A)(2). Docket 116 at ¶¶ 80-83. This Court previously granted Defendants summary judgment on that claim, finding that the ordinance was not facially unconstitutional. Docket 73 at 25. This Court also previously dismissed Mr. Briggs's claim for punitive damages against the Municipality because the Municipality is immune from punitive damages under 42 U.S.C. § 1983. Docket 82 at 6.

[46] Docket 122-1 at 11-21.

[47] Docket 125. In his motion for partial summary judgment, Mr. Briggs also asserts that AMC 08.30.120(A)(2) is unconstitutional as applied to Mr. Briggs. Docket 125 at 15-21. However, the core issue that Mr. Briggs raises is that the phrase "leaving the public place" is subject to several interpretations, rendering it so vague that Mr. Briggs would not know how loud he would have to

in the alternative that, even if Officer Yi hard probable cause to arrest him, the arrest was still retaliatory and unconstitutional because, under the circumstances, officers typically exercise their discretion not to make an arrest.[48]

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with claims arising under federal law, 42 U.S.C. § 1983.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[49] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[50]  The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine

---

speak to violate the ordinance.  Docket 125 at 19.  That is substantively a facial challenge to the ordinance, which the Court has already rejected.  Docket 73 at 25.  Further, Mr. Briggs did not plead an as-applied challenge in his Second Amended Complaint, and he cannot raise a new legal theory on summary judgment.  *Christianson v. United States*, 706 F. Supp. 3d 1057, 1071 (D. Idaho 2023) ("It is impermissible to add a new claim or assert a new legal theory for the first time at the summary judgment stage." (first citing *Echlin v. PeaceHealth*, 887 F.3d 967, 977-78 (9th Cir. 2018); and then citing *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008))).

[48] Docket 134 at 1.

[49] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[50] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[51]  When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[52]

Where "[t]he parties dispute some facts necessary to decide the issue of qualified immunity . . . summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party."[53]

## DISCUSSION

### I.   Motions for Summary Judgment

#### a.  Retaliatory and False Arrest

The First Amendment forbids government officials from retaliating against individuals for speaking out.  To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.[54]

When the adverse action is an arrest, the causation element is generally satisfied only if the plaintiff "'plead[s] and prove[s] the absence of probable cause,' because

---

[51] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

[52] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[53] *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

[54] *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citation omitted).

the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest."[55]

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."[56] "There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime."[57]

Defendants move for summary judgment on the causation element of the First Amendment claim and on the Fourth Amendment false arrest claim, contending that Officer Yi had probable cause to arrest Mr. Briggs for disorderly conduct and assault.[58] Mr. Briggs disagrees, and, in his motion for partial summary judgment, he asks the Court to find that there was no probable cause for his arrest.[59]

### i. State Court Probable Cause Finding

---

[55] *Id.* at 62 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)).

[56] *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted).

[57] *United States v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010) (quoting *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984)).

[58] Docket 122-1 at 11-13.

[59] Docket 139 at 7-11; Docket 125 at 1.

As a threshold matter, Defendants observe that, at Mr. Briggs's arraignment in state court on the charges for disorderly conduct and harassment, the magistrate judge found that probable cause supported Mr. Briggs's arrest for disorderly conduct.[60] Mr. Briggs responds that the probable cause determination by the magistrate judge should not be given preclusive effect because collateral estoppel requires a final judgment on the merits and the disorderly conduct charge was later dismissed without an evidentiary hearing, a jury trial, a final judgment on the merits, or an appeal.[61]

"[I]n virtually every . . . jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes *prima facie* -- but not *conclusive* -- evidence of probable cause."[62] "Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."[63]

Here, Mr. Briggs asserts that at the state court arraignment, no evidence was admitted or testimony taken, and that the interview with the gas station store

---

[60] Docket 122-1 at 5, 11-12.

[61] Docket 139 at 8-9.

[62] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (emphasis in original) (citations omitted).

[63] *Id.* (citations omitted).

employee was omitted from the probable cause statement.[64]  The statement from the gas station employee is material to whether probable cause existed to charge Mr. Briggs with disorderly conduct, as AMC 8.30.120(A)(2) penalizes "[k]nowingly generat[ing a] loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others."  "Loud noise, in a public place, means noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."[65]  The gas station employee's statement that he could not hear what Mr. Briggs was saying from 15 feet away is material to the question of whether Mr. Briggs was speaking loud enough to inhibit an average person from conducting a conversation without leaving the public place.  Therefore, the Court finds that Mr. Briggs has sufficiently rebutted the state court's finding of probable cause, and the state court's decision does not conclusively determine whether there was probable cause for purposes of Mr. Briggs' retaliatory arrest claim.[66]

Nor does collateral estoppel apply to the state court's probable cause determination.  "State law . . . governs the application of collateral estoppel to a

---

[64] Docket 139 at 8; Docket 125 at 9.

[65] AMC 08.30.120(B)(2).

[66] See Scafidi v. Las Vegas Metro. Police Dep't, 966 F.3d 960, 964 (9th Cir. 2020) (holding that plaintiff's claim that "the police defendants misrepresented the results of the alleged victim's sexual assault exam on a warrant affidavit, manipulated the crime scene to make it look like he had drugged the alleged victim, and falsely accused him in the police report of having drugged her . . . create[d] a triable issue of material fact as to probable cause").

state court judgment in a federal civil rights action."[67]  Under Alaska law, collateral estoppel, also known as issue preclusion, bars relitigation when four requirements are met:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[68]

"Factors supporting a conclusion that a decision is final for this purpose are 'that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal.'"[69]  The party asserting preclusion bears the burden of pleading and proving that issue preclusion applies.[70]

Here, as Mr. Briggs argues, Officer Yi has failed to meet his burden to show that, at a minimum, the third factor is satisfied.[71]  The probable cause determination on the disorderly conduct charge was made at an initial appearance hearing in state court.  The disorderly conduct charge was dropped shortly thereafter, so

---

[67] *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citation omitted).

[68] *Powercorp Alaska, LLC v. Alaska Energy Auth.*, 290 P.3d 1173, 1182 (Alaska 2012) (quoting *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Doherty*, 167 P.3d 64, 71 (Alaska 2007)).

[69] *Briggs v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 732 P.2d 1078, 1082 (Alaska 1987) (quoting Restatement (Second) of Judgments § 13 cmt. g (1982)).

[70] *See Smith v. Stafford*, 189 P.3d 1065, 1075 (Alaska 2008).

[71] Docket 139 at 8-9.

there was no final judgment on the merits.  As such, the Court finds that collateral estoppel does not apply to the state court's probable cause determination.

## ii.  Probable Cause

Both Mr. Briggs and Defendants move for summary judgment on the issue of whether probable cause supported Officer Yi's arrest of Mr. Briggs.  Mr. Briggs maintains that no probable cause existed, whereas Defendants contend that Officer Yi had probable cause to arrest Mr. Briggs for disorderly conduct and fear assault.[72]

Under Alaska law,

Probable cause to arrest exists if the facts and circumstances known to the officer would support a reasonable belief that an offense has been or is being committed by the suspect . . . . Probable cause is determined objectively and requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred.[73]

Disorderly conduct under AMC 08.30.120(A)(2) includes "[k]nowingly generat[ing a] loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others."  The ordinance defines "public place" as "a place where the public is permitted to assemble, enter or pass through, whether publicly or privately maintained, including but not limited to places of accommodation, transportation, business and entertainment, or any other place

---

[72] Docket 139 at 7-11; Docket 122-1 at 10.

[73] *Yi v. Yang*, 282 P.3d 340, 345 (Alaska 2012) (alteration in original) (quoting *State v. Joubert,* 20 P.3d 1115, 1118-19 (Alaska 2001).

which is not a private place."[74]  And "[l]oud noise, in a public place, means noise which is loud enough to inhibit the ability of the average person in the same place to converse freely without leaving the public place."[75]

Regarding assault, "[a] person commits the crime of assault in the fourth degree if . . . by words or other conduct that person recklessly places another person in fear of imminent physical injury."[76]

> [A] person acts "recklessly" . . . when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . .[77]

"[A] person is 'placed in fear' of imminent injury if the person reasonably perceives or understands a threat of imminent injury."[78]

These are the undisputed facts: on the morning of July 12, 2022, Mr. Briggs was standing behind Officer Yi in line for the register inside a gas station.  Mr. Briggs held a canned drink in each hand, and there were other patrons behind Mr. Briggs in line.  While waiting in line, Mr. Briggs called Officer Yi a "pig."  Officer Yi

_____

[74] AMC 08.30.120(B)(3).

[75] AMC 08.30.120(B)(2).

[76] Alaska Stat. § 11.41.230(a)(3).

[77] Alaska Stat. § 11.81.900(a)(3).

[78] *Hughes v. State*, 56 P.3d 1088, 1090 (Ct. App. Alaska 2002) (interpreting Alaska Stat. § 11.41.220(a)(1)(A), assault in the third degree, which provides, "A person commits the crime of assault in the third degree if that person recklessly places another person in fear of imminent serious physical injury by means of a dangerous instrument").

turned around, he and Mr. Briggs exchanged words, and Mr. Briggs asked Officer Yi if he was drunk. Officer Yi blew in Mr. Briggs's face. Officer Yi handcuffed Mr. Briggs, escorted him out of the gas station, conducted a pat-down search, and placed Mr. Briggs in his patrol vehicle.

However, several disputes of fact preclude the Court from determining whether Officer Yi had probable cause to arrest Mr. Briggs for disorderly conduct or assault in the fourth degree. First, regarding disorderly conduct, the volume at which Mr. Briggs spoke to Officer Yi is disputed. Officer Yi recalls that Mr. Briggs raised his voice and yelled sufficiently loudly that patrons left their items and exited the gas station. Mr. Briggs insists that he was muttering under his breath and speaking in a normal conversational tone, and that a dispute of fact remains as to whether any other patron left the gas station. A gas station employee who was behind the counter said that he could not hear what Mr. Briggs was saying.

Regarding assault in the fourth degree, disputes of fact remain as to whether Mr. Briggs's words or conduct recklessly placed Officer Yi or anyone else in fear of imminent physical injury. The parties agree that Mr. Briggs was taunting Officer Yi —or, in Mr. Briggs's words, "call[ing] Yi names" and "critici[zing] him."[79] But they dispute whether those comments support probable cause to arrest Mr. Briggs for assault in the fourth degree. Further, Officer Yi maintains that Mr. Briggs was trembling and puffing his chest with his chin up, which Officer Yi stated amounted

---

[79] Docket 139 at 4; Docket 139-3 at 21 (Yi Dep.).

to a challenge to a fight.[80]  Mr. Briggs seems to agree that he gestured with his chin, but he contends that otherwise he did not pose a threat to Officer Yi.[81]  Officer Yi could not recall if Mr. Briggs "moved towards [him] in any way."[82]

Because disputes of material fact remain as to whether probable cause supported an arrest of Mr. Briggs for disorderly conduct or assault in the fourth degree, the Court denies Mr. Briggs's Motion for Partial Summary Judgment, and Defendants' Motion for Summary Judgment as to whether probable cause supported Officer Yi's arrest of Mr. Briggs.

### iii.  *Nieves* Exception

In *Nieves v. Bartlett*, the plaintiff, Russell Bartlett, was attending a week-long winter sports festival in a remote part of Alaska.[83]  The festival was also associated with large parties and excessive alcohol consumption.[84]  To patrol the festival, the State of Alaska employed about half a dozen police officers.[85]  On the final night of the festival, the defendants—Luis Nieves and Bryce Weight—were on patrol.[86]

---

[80] Docket 139-3 at 34 (Yi Dep.).

[81] Docket 139 4 ("Briggs did nothing more than call Yi names, stand still, and gesture with his chin."); Docket 139-3 at 27 (Yi Dep.) (when asked what specific actions Mr. Briggs took that were aggressive, Officer Yi responded that Mr. Briggs "stood his ground, chest up, chin up, he's shaking, arms to the side, giving me the 1000-yard stare").

[82] Docket 139-3 at 28 (Yi Dep.).

[83] *Nieves*, 587 U.S. at 395.

[84] *Id.*

[85] *Id.*

[86] *Id.*

Nieves first encountered Bartlett at 1:30 a.m.; Nieves was asking a group of festival attendees to move their beer keg inside because minors had been accessing the keg.[87] Nieves said that Bartlett told the group not to speak with the police, that he was drunk, and that he yelled at him.[88] Bartlett disputed that account, instead recalling that he was not drunk and Nieves alone was aggressive.[89] A few minutes later, Bartlett approached Weight, who had asked a minor if he had been drinking alcohol, and, according to Weight, Bartlet was aggressive, and yelled at him with slurred speech not to talk to the minor.[90] Weight claimed that Bartlett then moved toward him in a combative manner so he pushed Bartlett back.[91] Nieves saw the confrontation, ran over, and arrested Bartlett.[92] The officers characterized Bartlett as slow to comply with Nieves's orders so they forced him to the ground.[93] But Bartlett denied being aggressive and maintained that he was slow to comply

---

[87] *Id.*

[88] *Id.* at 395-96.

[89] *Id.* at 396.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

because he wanted to avoid aggravating a back injury.[94]  The officers charged Bartlett with disorderly conduct and resisting arrest.[95]

The State dismissed the criminal charges, and Bartlett sued under 42 U.S.C. § 1983.[96]  He claimed that the officers violated his First Amendment rights by arresting him for refusing to speak with them and for intervening in the discussion with the minor.[97]  The district court granted summary judgment to the officers because the court determined there was probable cause to arrest Bartlett.[98]  The Ninth Circuit reversed.[99]

The Supreme Court granted certiorari to consider "whether probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment."[100]  In reaching an answer—generally, yes—the Supreme Court explained that some retaliation claims, like claims of retaliatory prosecution, present an inherent causation problem.[101]  "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the

---

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at 396-97.

[98] *Id.* at 397.

[99] *Id.*

[100] *Id.* at 397-98.

[101] *Id.* at 399-400.

motive . . . must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."[102] "Unlike most retaliation cases, in retaliatory prosecution cases the official with the malicious motive does not carry out the retaliatory action himself—the decision to bring charges is instead made by a prosecutor, who is generally immune from suit and whose decisions receive a presumption of regularity."[103] "To account for this 'problem of causation' in retaliatory prosecution claims, [the Supreme Court] adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge."[104]

In *Nieves*, the Supreme Court reasoned that a similar causation problem arises in retaliatory arrest claims and held that a plaintiff bringing a retaliatory arrest claim must generally prove the absence of probable cause for his arrest.[105] But the Court also held that, "[a]lthough probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."[106] As such, "the no-probable-cause requirement [does] not apply when a plaintiff presents objective evidence that he was arrested when otherwise

---

[102] *Id.* at 398-99.

[103] *Id.* at 400.

[104] *Id.*

[105] *Id.* at 401-04.

[106] *Id.* at 406.

similarly situated individuals not engaged in the same sort of protected speech had not been."[107]

In *Gonzalez v. Trevino*, the plaintiff, Sylvia Gonzalez, was a member of the city council.[108] As a council member, she spearheaded a petition to remove the city manager.[109] At the end of a city council meeting where the petition was being discussed, the mayor asked Gonzalez for the petition.[110] Gonzalez told the mayor that he had the petition.[111] The mayor asked Gonzalez to check her binder, in which she found the petition.[112] Gonzalez was charged under Texas's anti-tampering statute which, in part, prohibited a person from intentionally "remov[ing] . . . a governmental record."[113]

Gonzalez sued the mayor, police chief, and private attorney who led the investigation into her conduct under 42 U.S.C. § 1983.[114] She alleged that she was arrested in retaliation for coordinating the petition to remove the city manager

---

[107] *Id.* at 407.

[108] 602 U.S. 653, 655 (2024) (per curiam).

[109] *Id.*

[110] *Id.* at 656.

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.*

in violation of her First Amendment rights.[115]  Gonzalez conceded that there was probable cause for her arrest, but she maintained that the *Nieves* exception applied.[116]  In support of that claim, she provided a survey of the preceding decade's misdemeanor and felony indictments to demonstrate that no one else had been arrested under Texas's anti-tampering statute for removing a government document.[117]  Rather, the charges made under that statute involved fake government identification documents, fake checks, hiding murder evidence, or cheating on government exams.[118]

The Supreme Court held that the evidence presented by Gonzalez could satisfy the *Nieves* exception "because the fact that no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal prohibition is longstanding and the conduct at issue is not novel—makes it more likely that an officer *has* declined to arrest someone for engaging in such conduct in the past."[119] The Supreme Court held that the court below "took an overly cramped view of *Nieves*" because it "thought Gonzalez had to provide very specific comparator evidence—that is, examples of identifiable people who mishandled a government

---

[115] *Id.*

[116] *Id.* at 657.

[117] *Id.*

[118] *Id.*

[119] *Id.* at 658 (emphasis in original).

petition in the same way Gonzalez did but were not arrested."[120] The Supreme Court vacated the appellate court's judgment and remanded for consideration of whether the evidence presented by Gonzalez satisfied the *Nieves* exception.[121]

Mr. Briggs filed a supplement to his motion for partial summary judgment in support of his position that his case falls within the narrow exception from *Nieves*.[122] In the supplement, he provides copies of police reports and other criminal records from other APD arrests for disorderly conduct.[123] Mr. Briggs maintains that, from 2018 to 2023, 256 people were arrested in Anchorage for disorderly conduct.[124] Mr. Briggs's counsel avers that he has reviewed the reports for all of those arrests and "found no cases where an individual was arrested under AMC 08.30.120(A)(2) in circumstances similar to Mr. Briggs."[125] He asserts that "[a]ll the other cases involved far greater disturbances in scope and duration" and there were "no instances where a person was arrested for creating noise for a minute or two and then stopped when asked."[126] Further, counsel represents that, "[i]n nearly every case the arrestee was given a Disorderly Conduct warning before

---

[120] *Id.* (internal quotation marks and citation omitted).

[121] *Id.* at 659.

[122] Docket 134 at 3-10.

[123] Docket 134-1 at 3-38.

[124] Docket 134 at 5-9; *see also* Docket 23-1 at 4 (Elkinton Decl.) (listing 258 referrals from the police for charges of disorderly conduct from 2018 to 2023).

[125] Docket 134-1 at ¶ 3 (Dosik Decl.).

[126] Docket 134-1 at ¶ 3 (Dosik Decl.).

being arrested."[127] Mr. Briggs provides five examples of other arrests for disorderly conduct in support of his claim that officers usually exercise their discretion and do not arrest others similarly situated as to Mr. Briggs:

1.      An extremely intoxicated individual was yelling obscenities outside his sister's residence. Police arrived at 1:46 a.m. and gave him a disorderly conduct warning and left. The individual did not heed the warning and at 2:05 a.m. police returned and found that he had broken his sister's living room window. The individual continued to yell while being handcuffed and escorted to the patrol vehicle, despite multiple additional warnings.

2.      At 4:46 p.m. police responded to a domestic violence call. One woman was arrested for assault. While waiting for a female officer to perform a pat search, the arrestee began yell and curse loudly in front of several children. The police officer issued a disorderly conduct warning, but the arrestee continued to yell and curse loudly.

3.      At 4:40 a.m. police responded to the Sockeye Inn for disorderly conduct complaint. From 20 feet away, the responding officer heard a person yelling inside the Inn. The person continued to yell and scream in the lobby of the Inn as she tried to explain what happened to the responding officer. Officer told her to stop yelling, and she did for a few minutes. She started again and the officer gave her a disorderly conduct warning. The warning had no effect and she continued to yell. She was then arrested for disorderly conduct.

4.      At 2:19 a.m. police responded to residence for a disturbance. A resident said another person had assaulted her. She did not want to press charges but wanted that person removed from the residence. The accused was extremely intoxicated, and continually screamed while being escorted outside. She was given a disorderly conduct warning. She continued to scream and was charged with disorderly conduct.

5.      At 2:29 a.m. police responded to a residence for disorderly conduct. They contacted an intoxicated man who yelled and screamed during the entire contact. He was given disorderly conduct

---

[127] Docket 134-1 at ¶ 3 (Dosik Decl.).

warnings which he ignored. The man continued to yell and scream while being escorted to the patrol vehicle.[128]

Defendants respond that Mr. Briggs "failed to make a serious attempt at claiming objective evidence" that he was arrested when others not engaged in protected speech were not arrested for similar conduct; rather, Defendants posit that the hundreds of arrests for disorderly conduct show that Mr. Briggs "is not a 'class of one,' unlike the plaintiff in the *Gonzalez* case."[129]

The Court finds that the evidence offered by Mr. Briggs is like the evidence offered by the plaintiff in *Gonzalez*. Here, Mr. Briggs has shown that arrests are routinely made for disorderly conduct but that there is no evidence of another arrest in situations similar to this case. That is precisely what the plaintiff did in *Gonzalez*: she showed that others had been arrested under Texas's anti-tampering statute but not in the circumstances under which she was arrested.[130] Therefore, the evidence proffered by Mr. Briggs could support a claim that the *Nieves* exception applies.

However, because disputes of fact remain as to the volume at which Mr. Briggs was speaking and the disruptive nature of his speech, at this stage the Court cannot determine if Mr. Briggs's conduct is dissimilar from the conduct of other individuals arrested for disorderly conduct. Because Mr. Briggs moved for

---

[128] Docket 134 at 5-7.

[129] Docket 138 at 9-10.

[130] *Gonzalez*, 602 U.S. at 658.

Case No. 3:22-cv-00265-SLG, *Briggs v. Yi, et al.*
Order on All Pending Motions
Page 25 of 45

summary judgment as to the *Nieves* exception, the Court must view the evidence in the light most favorable to Defendants, and, according to Officer Yi, Mr. Briggs was yelling.  As such, the Court denies Mr. Briggs's partial motion for summary judgment as to the issue of whether the *Nieves* exception applies.

### iv.  Qualified Immunity

Officer Yi asserts that he is entitled to qualified immunity on Mr. Briggs' retaliatory arrest claim.[131]   Mr. Briggs disagrees, maintaining that disputes of material fact preclude a qualified immunity determination and that his right to "call police officers 'pigs'" without being arrested was clearly established at the time of the incident.[132]   He contends that *City of Houston v. Hill* clearly established a "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest."[133]   And he maintains that *Duran v. City of Douglas* established that "'inarticulate and crude' conduct that 'represent[s] an expression of disapproval toward a police officer' is 'squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech—such as stopping or hassling the speaker—is categorically prohibited by the Constitution.'"[134]

---

[131] Docket 122-1 at 20-21; *see* Docket 138 at 3-8.

[132] Docket 139 at 26-27.

[133] Docket 139 at 27 (quoting 482 U.S. 451, 462-63 (1987)).

[134] Docket 139 at 27 (alteration in original) (quoting 904 F.2d 1372, 1378 (9th Cir. 1990)).

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct."[135] The qualified immunity analysis consists of two inquiries: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted.[136] Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[137] "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."[138] In assessing whether a right is clearly established, courts look to binding precedent of the Supreme Court or the Ninth Circuit.[139] "[I]n the absence of binding precedent, [courts] 'look to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, 'including

---

[135] *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted)).

[136] *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc).

[137] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[138] *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)).

[139] *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

decisions of state courts, other circuits, and district courts.'"[140]  A plaintiff generally "bears the burden of showing that the rights allegedly violated were clearly established" at the time of the incident.[141]

A defendant is entitled to qualified immunity as a matter of law only if, taking the facts in the light most favorable to the nonmoving party, he or she did not violate any clearly established constitutional right.[142]  When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity.[143]

In *Hill*, the Supreme Court held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and struck down a city ordinance for being substantially overbroad in violation of the First Amendment.[144]  However, because that case concerned a facial challenge to a city law, it does little to establish Mr. Briggs's right to be free from an arrest by Officer Yi at the requisite level of specificity in this case.

---

[140] *Id.* (quoting *Drummond* ex rel. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)).

[141] *Shafer*, 868 F.3d at 1118 (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) (internal quotation marks omitted)).

[142] *Torres v. City of L.A.*, 548 F.3d 1197, 1210 (9th Cir. 2008).

[143] *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017); *see also Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019).

[144] 482 U.S. at 461, 466-67.

*Duran* also does not clearly establish the right at issue in this case. *Duran* was decided in 1990, before *Nieves*. In the decades before *Nieves*, the Ninth Circuit had held that it was "unlawful to arrest [an individual] in retaliation for their First Amendment activity, notwithstanding the existence of probable cause."[145] However, *Nieves* overruled that Ninth Circuit precedent "to the extent [it] held that a plaintiff can prevail on a First Amendment retaliatory arrest claim regardless of whether probable cause existed for the arrest."[146]

However, as detailed above, *Nieves* recognized a right to be free from an arrest even when there is probable cause to arrest when the reason for the arrest is not the disorderly conduct; rather, it is the protected speech. Although qualified immunity is an issue for the court, the Court believes this to be a case in which a special verdict on a disputed discrete fact is warranted in order to resolve a qualified immunity claim.[147] If a jury determines that Mr. Briggs was not yelling or threatening Officer Yi in the gas station, then Officer Yi lacked probable cause to arrest him. Further, *Nieves* clearly established that even if probable cause exists

---

[145] *Ballentine*, 28 F.4th at 65 ("[O]ur February 2013 decision in *Ford* held that by July 2007, in light of *Skoog*, it was clearly established law in this circuit that there is a 'First Amendment right to be free from police action motivated by retaliatory animus, even if probable cause existed for that action.'" (quoting *Ford v. City of Yakima*, 706 F.3d 1188, 1195-96 (9th Cir. 2013))). The incident in *Ballentine* occurred in 2013, several years before *Nieves* was decided and when the law in this circuit was more clearly established.

[146] *Id.* at 65 n.1 ("*Nieves* abrogated . . . *Skoog* to the extent [that] case[] held that a plaintiff can prevail on a First Amendment retaliatory arrest claim regardless of whether probable cause existed for the arrest.").

[147] *See Morales*, 873 F.3d at 824; *Nehad*, 929 F.3d at 1140.

for an arrest, a plaintiff can still prevail on a First Amendment retaliatory arrest claim if the plaintiff proves that officers "typically exercise their discretion not to" arrest individuals in similar circumstances.[148]  The Court therefore denies Officer Yi qualified immunity on Mr. Briggs's retaliatory arrest claim.

### b. Unreasonable Search

Defendants contend that they are entitled to summary judgment on Mr. Briggs's claim for an unreasonable search under the Fourth Amendment because "Officer Yi had probable cause to arrest Mr. Briggs."[149]  Because the Court finds above that disputes of material fact remain as to whether probable cause supported the arrest of Mr. Briggs, the Court denies Defendants summary judgment on Mr. Briggs's Fourth Amendment unreasonable search claim.

### c. *Monell* Claim

Defendants move for summary judgment on Mr. Briggs's claim against the Municipality brought pursuant to *Monell*.[150]  A plaintiff seeking to establish municipal liability must demonstrate that the government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation

---

[148] *Nieves*, 587 U.S. at 406.

[149] Docket 122-1 at 13.

[150] Docket 122-1 at 13-17; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

he suffered."[151]  "To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation."[152]

Mr. Briggs contends that "the Municipality has a practice and custom of arresting people under AMC 08.30.120(A)(2) but then dismissing the charges in nearly every case."[153]  He points to data showing that in 252 of 258 arrests under that ordinance from 2018 to 2023, prosecution was declined or the charges were dismissed.[154]  Mr. Briggs also maintains that the Municipality has "a written policy encouraging police officers to arrest people for disorderly conduct when it would be difficult to prove resisting arrest."[155]  In support, he references Anchorage Police Department Policy 3.01.070, which states that officers should consider the alternative charges of assault on a police officer or disorderly conduct if an individual's conduct does not satisfy a charge of resisting arrest.[156]

Mr. Briggs maintains that together, this municipal practice and municipal policy "chill the exercise of First Amendment rights" and that "[a] government violates 42 U.S.C. § 1983 when it repeatedly arrests people for violation of an

---

[151] *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (internal quotation marks and citations omitted).

[152] *Id.*

[153] Docket 139 at 18; Docket 116 at ¶¶ 84-85 (Count VII).

[154] Docket 139 at 18 (citing Docket 23-1 at 3).

[155] Docket 139 at 18.

[156] Docket 139 at 18-19; Docket 139-5 at 3.

ordinance without any realistic expectation of a conviction."[157]    He cites *Dombrowski v. Pfister*.[158]  In that case, the plaintiffs challenged a state Subversive Activities and Communist Control Law under which they had repeatedly been prosecuted.[159]   The plaintiffs raised a facial challenge to the law as overbroad under the First and Fourteenth Amendments and sought an injunction prohibiting prosecutions under the law.[160]   The Supreme Court held that the statute was overbroad and an injunction was proper because "[s]o long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one. Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression."[161]

*Dombrowski* is distinguishable.  Here, the Court has previously found that the disorderly conduct ordinance was not unconstitutionally overbroad on its face.[162]  And the law at issue in *Dombrowski* was related to the content of speech by disfavored political groups.  Here, the ordinance is unrelated to the content of speech.  Further, the fact that nearly all disorderly conduct charges from 2018 to 2023 did not result in further criminal process does not suggest that the

---

[157] Docket 139 at 19.

[158] Docket 139 at 19 (citing *Dombrowski*, 380 U.S. 479 (1965)).

[159] *Dombrowski*, 380 U.S. at 481, 487-89.

[160] *Id.* at 481.

[161] *Id.* at 494, 497.

[162] Docket 73 at 25.

Municipality has a practice of charging and dismissing disorderly conduct for an improper or unconstitutional purpose. In the five examples of other arrests under the disorderly conduct ordinance that Mr. Briggs included with his supplemental motion, none suggested that a person was charged with disorderly conduct to chill the exercise of First Amendment rights.[163]

As to the APD policy Mr. Briggs cites, it provides guidance as to when a charge other than resisting arrest might be more appropriate. It does not direct officers to arrest individuals for disorderly conduct based on the content of their speech, which is what Mr. Briggs alleged occurred here. As such, the Court finds that Mr. Briggs has not proffered evidence sufficient to demonstrate that there is a genuine issue of material fact as to whether an unconstitutional municipal practice or policy was the moving force behind the purported deprivation of his constitutional rights.

In his opposition to Defendants' motion for summary judgment, Mr. Briggs also briefs a *Monell* theory based on the Municipality's purported "custom of arresting individuals for harassment of a police officer as long as the police officer gives two warnings first."[164] However, the Second Amended Complaint contains no allegations regarding any custom of issuing two warnings before arresting an individual on a harassment charge. The Second Amended Complaint alleges that

---

[163] *See* Docket 134 at 5-7.

[164] Docket 139 at 22.

Officer Yi told Mr. Briggs that he was harassing him, but it does not indicate if Officer Yi told Mr. Briggs this more than once or otherwise allege facts supporting a theory based on a custom of providing two warnings before making an arrest.[165] Where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."[166]  Therefore, the Court finds that a *Monell* theory based on the Municipality's purported two-warning custom is not properly before the Court.

In sum, the Court grants summary judgment to the Municipality on Mr. Briggs's *Monell* claim.[167]

### d. Punitive Damages

Defendants move for summary judgment on Mr. Briggs's claim for punitive damages against Officer Yi because a "reasonable jury could not conclude his behavior involves reckless or callous indifference to Mr. Briggs's First Amendment rights."[168]  Mr. Briggs responds that the question of whether Officer Yi's conduct

---

[165] Docket 116 at ¶ 12

[166] *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008), *overruled in part by Apache Stronghold v. United States*, 101 F.4th 1036, 1043 (9th Cir. 2024); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

[167] *See supra* note 43.

[168] Docket 122-1 at 18.

satisfies the standard for punitive damages should go to the jury.[169]  As to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'"[170]  Because the Court finds above that disputes of material fact remain as to the volume of Mr. Briggs's speech and his demeanor, the Court denies Defendants summary judgment as to Mr. Briggs's claim for punitive damages against Officer Yi.

## II.    Motion to Exclude Expert Testimony of James Borden

Mr. Briggs moves to exclude the report and testimony by Defendants' expert, James Borden, maintaining that Mr. Borden is "not qualified to testify on any matter in this case and his opinions are neither relevant nor reliable under Federal Rule of Evidence 702 and the standards set forth in *Daubert*."[171]  Defendants respond that Mr. Borden is "qualified to provide expert testimony on police practices," and that his opinions are relevant, based on sufficient facts, and reliable.[172]

Federal Rule of Evidence 702 provides that a person "qualified as an expert by knowledge, skill, experience, training or education" may provide expert testimony if he or she has "scientific, technical, or other specialized knowledge."[173]

---

[169] Docket 139 at 25.

[170] *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (citations omitted).

[171] Docket 124 at 1.

[172] Docket 129 at 2-7.

[173] Fed. R. Evid. 702(a).

That knowledge must "help the trier of fact to understand the evidence or determine a fact in issue"[174]—this requirement "goes primarily to relevance."[175] The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.[176]

Before a witness may testify as an expert, a district court must make three findings. The court must find that the proposed testimony is reliable, which requires a finding (1) that the witness is qualified to offer expert testimony and (2) that the witness has applied reliable principles. The court must also find that the witness's testimony is relevant in that it may help the factfinder understand evidence or determine a fact at issue in the case. So long as an expert meets these threshold considerations, the expert may testify; it is up to the factfinder to determine the weight to give that testimony.[177] "If the proposed testimony meets the thresholds of relevance and reliability, its proponent is 'entitled to have the jury decide upon [its] credibility, rather than the judge.'"[178] "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of

---

[174] Fed. R. Evid. 702(a).

[175] *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* Apr. 27, 2010 (citing *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert I*), 509 U.S. 579, 591 (1993)).

[176] *Daubert I*, 509 U.S. at 592 n.10; *Lust* ex rel. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[177] *Primiano*, 598 F.3d at 565.

[178] *Elosu v. Middlefork Ranch, Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (alteration in original) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006)).

the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage."[179]   Accordingly, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[180]

### a. Qualifications and Reliability

An expert must be qualified to give expert testimony on the relevant topics, and may be qualified "by knowledge, skill, experience, training, or education."[181] "An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion."[182]   An expert's conclusions must be "based on sufficient facts or data," but the "'sufficient facts or data' element requires foundation, not corroboration."[183]   The testimony must also be "the product of reliable principles and methods," and the principles and methods must have been reliably applied to the facts of the case.[184]   The reliability requirement also analyzes "whether the reasoning or methodology underlying the testimony is scientifically valid."[185]   "[T]he trial court has discretion to decide how to test an

---

[179] *Id.* at 1026.

[180] *Primiano*, 598 F.3d at 564 (citing *Daubert I*, 509 U.S. at 596).

[181] Fed. R. Evid. 702.

[182] *Elosu*, 26 F.4th at 1024.

[183] *Elosu*, 26 F.4th at 1025 (citing Fed. R. Evid. 702).

[184] Fed. R. Evid. 702(b), (c), (d).

[185] *Daubert I*, 509 U.S. at 592-93.

expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case."[186]

Mr. Briggs maintains that "[n]one of Mr. Borden's listed qualifications demonstrate expertise in determining what constitutes 'legitimate law enforcement action,' whether an arrest is 'based on proper elements,' whether a person has 'committed the misdemeanor crime of Disorderly Conduct,' whether the elements of harassment have been met, or whether Yi made 'a mistake of the mind and not of the heart.'"[187] Defendants counter that, based on his career as a police officer and "education in the field of police officer decision-making and police performance factors," "Mr. Borden is specifically qualified to testify on matters related to Officer Yi and Joshua Briggs's movements as both described by the officer and the video evidence."[188]

The parties have filed Mr. Borden's curriculum vitae and expert report, as well as a list of cases in which Mr. Borden has participated as an expert.[189] A review of Mr. Borden's curriculum vitae demonstrates that he is qualified to testify as an expert on the use of force and police practices based on his experience as

---

[186] *Primiano*, 598 F.3d at 564 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 152 (1999)) (internal quotation marks omitted); *see United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996) ("Social science in general, and psychological evidence in particular, have posed both analytical and practical difficulties for courts attempting to apply Rule 702 and *Daubert*.").

[187] Docket 124 at 8-9.

[188] Docket 129 at 3.

[189] Docket 129-1, 129-2 (curriculum vitae); Docket 129-3 (case list); Docket 124-1 (expert report).

a police officer and his training on use-of-force issues. Mr. Briggs's concerns regarding Mr. Borden's qualifications go to weight rather than whether Mr. Borden satisfies the threshold inquiry as to whether he can testify as an expert.

As to whether Mr. Borden's opinions are derived from reliable principles and methods, Mr. Borden's expert report explains that he reviews relevant case documents, including any video evidence, to develop an understanding of the facts, and then analyzes the officer's actions "to determine what the officers did, as well as their stated justification for what they did and why they did it."[190] He then "compar[es] what the officers did and their reasons for doing so with the objective standards derived from police training and accepted police practice."[191] In Mr. Borden's case, "relevant reliability concerns . . . focus upon personal knowledge or experience."[192] The Court finds that reviewing case material and relevant documents, and then providing an assessment of the events in light of Mr. Borden's personal experience in law enforcement, is a sufficiently reliable methodology.[193] Because the Court finds that Mr. Borden is qualified to testify as to police practices based on his personal knowledge and experience, Defendants'

---

[190] Docket 124-1 at 16.

[191] Docket 124-1 at 17.

[192] *Kumho Tire*, 526 U.S. at 150.

[193] *See Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1058 (9th Cir. 2024) (noting that a court's assessment of the reliability of an expert's methodology is "flexible and can be molded to fit 'the particular circumstances of the particular case.'" (quoting *Elosu*, 26 F.4th at 1024)).

Motion for an Evidentiary Hearing at Docket 132 is denied because Defendants indicated they requested the hearing to address "the expert's qualifications to testify."[194]

### b. Relevance

To be admissible, expert testimony must be relevant to the case: it must "help the trier of fact to understand the evidence or determine a fact in issue."[195] Relevancy "simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'"[196] The testimony does not have to be persuasive in order to be relevant.[197] Further, an expert opinion on an ultimate issue of fact may be admissible.[198] But an expert witness may not opine about a legal conclusion, including an ultimate issue of law.[199] However, even if an expert report contains inadmissible legal opinions, that alone does not justify precluding the expert from testifying at all.[200]

---

[194] Docket 132 at 2.

[195] Fed. R. Evid. 702(a).

[196] *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (alterations in original) (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)).

[197] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("*Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance.").

[198] Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

[199] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

[200] *See Hyer*, 118 F.4th at 1059.

Mr. Borden's report contains four opinions:

1. **Opinion 1: Engagement.** I believe Officer Yi had a legitimate law enforcement goal and objective in his arrest of Briggs for Disorderly Conduct, a violation of AMC 8.30.120(A)(2). Although detention was a component of the arrest, the detention was brief, and Briggs was released from the scene. The video evidence shows that Briggs appeared to be antagonistic during the detention. (See analysis)

2. **Opinion 2: Legitimate Law Enforcement action.** Taking all evidence as factual and accurate, Briggs committed the misdemeanor crime of Disorderly Conduct in the presence of Officer Yi. Briggs's behavior affected other individuals and caused other patrons in the store at the time of the occurrence to leave the premises without completing their transactions. With the elements of the violations being cited in multiple case documents, and prosecutorial merit being established by the Municipal Attorney's Office, the charges were approved.

3. **Opinion 3: Use of Force.** Officer Yi made the practical and appropriate decision to use handcuffs and detain Briggs as he was arrested. Force used was minimal to include controlling the movement of Briggs, the use of handcuffs and placing him in the back of the patrol car. (No further analysis)

4. **Opinion 4: Harassment Charge.** The Harassment violation, Code 8.10.110(A)(I), was not a valid charge. However, the elements of this Harassment charge were in place, a sworn officer generally cannot be a victim of Harassment. I believe Officer Yi and others made this oversight. However, the Harassment charge was ancillary to the charge of disorderly conduct and not the only charge that Briggs was issued a summons for. Additionally, Briggs was not taken into custody and booked into jail for the charges.[201]

As explained above, the primary issue in this case is whether Officer Yi had

probable cause to arrest Mr. Briggs during the exchange in the gas station. A

---

[201] Docket 124-1 at 10-11.

dispute of material fact remains as to the volume of Mr. Briggs's speech and any effect on the other patrons of the gas station, facts which are relevant to whether Officer Yi had probable cause.

Opinion 1 essentially concludes that Officer Yi had probable cause to arrest Mr. Briggs for disorderly conduct, which is an impermissible legal conclusion.[202] Opinion 1 also does not aid the jury in determining the disputes of fact that remain, and Mr. Borden's opinion as to Mr. Briggs's detention is irrelevant, as the detention is not at issue in this case. As such, Mr. Borden is prohibited from testifying as to Opinion 1.

Opinion 2 is inadmissible for the same reason as Opinion 1: it is an impermissible legal conclusion. Mr. Borden is prohibited from testifying as to Opinion 2.

Opinion 3 has marginal relevance, as Mr. Briggs does not allege a use-of-force claim and Officer Yi's use of handcuffs and his placement of Mr. Briggs in his patrol car is not disputed and its legality is not at issue. And yet as Mr. Briggs acknowledges, Officer Yi's demeanor during the incident "may be relevant to his credibility."[203] Whether Officer Yi's decision to use handcuffs and detain Mr. Briggs

---

[202] *See Torres v. City of L.A.*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (holding that the district court abused its discretion by denying a motion in limine seeking to bar witnesses from testifying as to their own opinions about whether there was probable cause to arrest the plaintiff); *Stuart v. United States*, 23 F.3d 1483, 1487 (9th Cir. 1994) (affirming the district court's decision to preclude questioning an expert about whether probable cause existed to make a traffic stop, "a question that [the expert] was not as well-qualified as the trier of fact to answer").

[203] Docket 133 at 8.

in the patrol car was "practical and appropriate" could similarly have relevance to Officer Yi's credibility. Mr. Borden may testify as to Opinion 3.

Opinion 4 is inadmissible because it is irrelevant and would not help the trier of fact understand the evidence or determine a fact in issue. It is undisputed that the harassment charge was dismissed in state court for lack of probable cause. Further, Opinion 4 is an improper legal conclusion. Mr. Borden is prohibited from testifying as to Opinion 4.

In their opposition, Defendants contend that Mr. Borden could testify about numerous other topics that are not mentioned in his report. These topics include "how officers are trained to understand the difference between a suspect simply engaging in first amendment speech and what constitutes pre-assaultive indicators like body movement and tone during such encounter"; and "whether Officer Yi's actions and decision to search the contents of the wallet for identification and contraband is appropriate under these circumstances."[204] However, those opinions are not in the report. Defendants also state that Mr. Borden could testify as to the appropriateness of Officer Yi's detention of Mr. Briggs in his patrol car for approximately an hour; "how officers are trained regarding speech and whether speech paired with pre-assaultive indicators (threat cues) were appropriately dealt with in this case"; whether Officer Yi's acted in accordance with police practices with respect to his interaction with Mr. Briggs's girlfriend who approached Officer

---

[204] Docket 129 at 4-5.

Yi outside after Mr. Briggs was arrested; and whether Officer Yi appears drunk or belligerent in a video recording.[205]  However, none of these opinions are set forth in Mr. Borden's expert report.

On the current record, Mr. Borden cannot testify as to any of those topics because they were not disclosed in his expert report.[206]  Federal Rule of Civil Procedure 26(a) requires a party to disclose an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them."[207]  Under Federal Rule of Civil procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Because Mr. Borden's expert report fails to contain a statement of the opinions Defendants raise above, he cannot testify as to those opinions.

Accordingly, the Court grants in part Mr. Briggs's Motion to Exclude Expert Testimony at Docket 124; Mr. Borden can only testify as to Opinion 3 in his report.

## CONCLUSION

In light of the foregoing, Defendants' Motion for Summary Judgment at Docket 122 is **GRANTED** in part and **DENIED** in part.  The Court grants summary

---

[205] Docket 129 at 5-6.

[206] To the extent Defendants sought an evidentiary hearing to correct any omissions from the expert report, an evidentiary hearing is not the proper vehicle for supplementation.

[207] Fed. R. Civ. P. 26(a)(2)(B)(i).

judgment to Defendants on Mr. Briggs's *Monell* claim; the motion is otherwise denied. Plaintiff's Motion for Partial Summary Judgment at Docket 125 is **DENIED**. Further, Defendants' Motion for an Evidentiary Hearing at Docket 132 is **DENIED**, and Plaintiff's Motion to Preclude Expert Testimony at Docket 124 is **GRANTED** in part.

The Court sets a telephonic trial scheduling conference for **December 30, 2024, at 3:30 p.m.** All parties shall participate telephonically by dialing 571-353-2301 (Call ID 020262828, Pin 487051) approximately five minutes before the scheduled hearing time.

DATED this 23rd day of December 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE